**HOLDER, Plaintiff-Appellee, v. FARMAKIS, Defendant-Appellant.**

Ohio Appeals, Second District, Shelby County.

No. 162. Decided November 2, 1951.

280

Cummins & Boller, Sidney, for plaintiff-appellee.
Roland E. Berry, Sidney, for defendant-appellant.

## OPINION

By MILLER, J.

This is a law appeal from the judgment of the Common Pleas Court rendered upon the verdict of the jury in favor of the plaintiff-appellee. The action was brought to recover alleged overcharges for rent in violation of the "Rent Control Laws" under the Housing and Rent Act of 1947, Public Law 129, 80th Congress, as amended.

The record reveals that the defendant-appellant, the plaintiff's landlord, acquired the property in question several months after the effective date of the Rent Control Act, which became effective on March 1, 1942; that he registered the apartment occupied by the plaintiff as required by the Act, listing the rent on March 1, 1942, as being $25.00 per month, and under the heading of "Equipment" furnished, "running water" was listed as not being furnished by the landlord. However, under the heading of "Services" furnished, both hot and cold water were marked with an "X" indicating it was furnished by the landlord. A conflict in the above listing is apparent. Payment for the water consumed was demanded

by the defendant and paid for by the plaintiff, which forms the basis for one of the claims in this action. The certificate of registration is prima facie evidence of the ceiling rent and which may be modified by the proper degree of proof. The maximum rent allowable under the Act is the amount being charged on March 1, 1942. There was a conflict in the testimony concerning the payment of the water rent by the tenant prior to the effective date of the Act, and we therefore think the question was properly presented to the jury on this issue, and if it had not been paid by the tenant there would be a violation of the maximum rent to this extent.

The record reveals further that the certificate of registration provided that the landlord was to do the painting and decorating and to make all interior and exterior repairs. The plaintiff alleged and offered proof to establish that the defendant failed to make certain necessary repairs, which the plaintiff did at her own expense and which it is now claimed constitute overpayment under the terms of the Rent Control Act.

Concerning the obligations of the lalndlord to make repairs the defendant requested the Court to give to the jury the following special instructions before argument, each of which was refused and which is urged to be error:

No. 1. "I instruct you that as a matter of law a tenant has no legal right to make any changes or alterations on the premises of the landlord without the consent of the landlord."

No. 4. "I instruct you as a matter of law that if you find from the evidence that the plaintiff did expend any moneys for repairs or decorating and that such was done without the knowledge or consent of the defendant, that as to such items of repair or decorating the plaintiff is not entitled to recover."

No. 5. "I instruct you as a matter of law that if you find from the evidence that the plaintiff has paid no money or other consideration to the defendant for repairs, decorating or painting, that in that event you can not make any finding for the plaintiff of any of such items."

Since the foregoing instructions all are related to the same subject matter they will be considered together.

We hold that in the absence of statute, ordinance, express stipulation or covenant, the lessor is not bound to make repairs or improvements; that there is no implied covenant to make repairs. **Burdick v. Cheadle, 26 Oh St 393; Goodall v. Deters, 121 Oh St 432; Grace v. Williams, 36 Oh Ap 569; 24 O. Jur. 918, Sec. 185.** The petition does not set forth any allegation which would require the landord to make any repairs or improvements. Under such conditions it is up to the landlord

to decide what changes should be made and what repairing and decorating is necessary. However, under the Rent Control Act, the tenant has a remedy; if he feels that the services which existed on the "freeze date" have been decreased he can make complaint to the Housing Expediter who is authorized to investigate the matter and issue an appropriate order such as reducing the amount of the ceiling rent. Had the landlord demanded to be reimbursed for such repairs and received payment for the same, this would clearly be an overcharge. But we have no such facts in this case, the tenant making the repairs, paying for the same and now asking to be reimbursed by the landlord. This same question arose in the case of Penner v. Geller, 87 N. Y. S. (2d Series) p. 249. At page 250 the Court says:

"The maximum rent heretofore established for the dwelling space involved herein continues in effect until changed by the Housing Expediter, Controlled Housing Rent Regulations Sec. 4 as amended, 50 U. S. C. A. Appendix, Sec. 1881 et seq. Where there is a decrease in the minimum services to which the tenant is entitled, his remedy is by appropriate application to the Expediter under sections 5 (b) 3 and 5 (c) 3 of the rent regulations for a corresponding reduction of the maximum rent. There can be no recovery for penalties or damages in the absence of a refund order. Cf. Woods v. Stone, 333 U. S. 472, 68 S. Ct. 624."

But even if the landlord had agreed to make these repairs the measure of damages would not be the cost of repairs, but would be the difference in the rental value of the property before and after the repairs were made. **Cochran v. Widra, 35 Abs 608,** 41 N. E. (2d) 875. The same rule is pronounced under Section 5, Paragraph (b) of Rent Regulations under the Housing and Rent Act of 1947, it provides:

"(3) * * * Where a landlord decreased * * * services, or equipment * * * while the accommodations were occupied, * * * and * * * fails to file a petition or a written report as was required by the provisions of this paragraph (b) * * * the rent received by the landlord for any rental period commencing on or after such decrease * * * shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order decreasing the maximum rent on account of such decrease in * * * services, * * * or equipment. Such amount shall be refunded to the tenant within 30 days after the date of issuance of the order, unless the refund is stayed * * *. If the Expediter finds that the landlord was not at fault in failing to comply with the provisions of this paragraph (b) in effect prior to April 1, 1948, the order may relieve the landlord of the duty of refund."

Also in the case of Johnson v. Pemberton, 97 N. Y. S. (2d series) 153, syllabus 6 provides:

"Under rent law and regulations, any decrease in essential services provided by landlord automatically lowers amount of rent which landlord is entitled to demand and receive, so that where apartment was extensively damaged by fire and landlord failed to exercise reasonable diligence in restoring services and repairing apartment, maximum rent payable was subject to reduction in amount to be determined by Federal Housing Expediter. * * *"

We therefore hold that special instructions Nos. 1, 4 and 5 were proper and should have been given.

The sixth assignment of error relates to the instruction given to the jury in the court's general charge. This charge also relates to the cost of repairs, and for the reason heretofore given we think should not have been given and constituted prejudicial error.

In giving consideration to the law applicable to the facts presented we hold that the seventh assignment of error is well taken and that the judgment is against the manifest weight of the evidence.

The third assignment of error is well made in that the judgment was excessive.

We find no other errors in the record.

The judgment will be reversed and cause ordered remanded for further proceedings according to law.

HORNBECK, PJ, WISEMAN, J, concur.