**WEINGARDEN**

v.

**EAGLE RIDGE CONDOMINIUMS.**

Toledo Municipal Court,
Lucas County, Ohio.

No. CVE–94–11694.

Decided June 6, 1995.

10

*Jack J. Brady,* for plaintiff Don Weingarden.

*Timothy J. Horne,* for defendant Eagle Ridge Condominiums.

THOMAS J. OSOWIK, Judge.

## *FINDINGS OF FACT*

The court finds that on February 14, 1994, the plaintiff tenant entered into a written rental agreement with the defendant landlord for an apartment located at 2761 Pine Trace, Maumee, Ohio.

As provided by the terms of the agreement, the tenant paid the sum of $150 as a security deposit with a monthly rental rate of $750, payable on the first of each month.

Pursuant to the terms of the lease executed on February 14, 1994, the month of March was rent-free.

The parties further agreed that the landlord would replace the bedroom door, repair the electrical outlet in the bedroom, and replace the boards in the basement.

The plaintiff took possession of the premises on or about March 1, 1994. On March 23, 1994, the plaintiff notified the apartment manager, in writing, that the basement of the apartment would leak when snow melted and also after a rain. The leak would saturate the carpeting in the basement and render the basement useless. The plaintiff also indicated that the stairway in the unit was not in compliance with the Ohio Basic Building Code and that he had fallen as a result thereof and, further, that the door in the bedroom had not been repaired and/or replaced and that the frame on the master bedroom door was cracked. The tenant indicated that as a result, he would vacate the premises on or before July 1, 1994.

The evidence further establishes that the vent above the unit would rattle loudly when the wind blew and that, on occasion, the vent rattling would interrupt the plaintiff's sleep.

The testimony further shows that when the carpeting in the basement became wet, it would become mildewed and odorous.

The testimony also establishes that the landlord attempted to remedy the basement leak, but to no avail. The landlord also further responded to the complaint concerning the vent rattle, but the vent continued to rattle when the wind blew.

On April 1, 1994, the landlord replied by letter that the tenant would not be released from his obligations under the terms of the lease.

On June 16, 1994, the defendant surrendered the keys to the apartment and indicated in writing that his deposit should be forwarded to the "Michigan

address on my application." The evidence further establishes that the landlord had that address in its file. The tenant retained the keys to the mailbox until July 22, 1994. These keys were disbursed by the Postal Service and not the landlord.

The landlord did not return any security deposit to the tenant and, further, did not send any itemization of the disbursements to the tenant.

The testimony establishes that the landlord spent the security deposit on a water bill in the amount of $27.11 and for the cost of carpet cleaning, with the balance toward unpaid rent, pursuant to the terms of the lease.

The testimony and undisputed evidence did not establish any damage to the premises as a result of the tenancy of the plaintiff.

## CONCLUSIONS OF LAW

The obligations of a landlord are set forth in R.C. 5321.04. That section states, in pertinent part, as follows:

"(A) A landlord who is a party to a rental agreement shall do all of the following:

"(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

"(3) Keep all common areas of the premises in a safe and sanitary condition;

"(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him;

"(5) When he is a party to any rental agreements that cover four or more dwelling units in the same structure, provide and maintain appropriate receptacles for the removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of a dwelling unit, and arrange for their removal[.]"

The evidence establishes that several steps on the interior stairway were in violation of the Ohio Building Code with respect to tread depth. It was determined that several steps had tread depth of seven inches when, according to the Basic Building Code, Section 616.4.1, minimum depth should be nine inches.

The court finds that while there was evidence that the plaintiff and his family members had tripped and fallen down these steps, there was insufficient evidence to establish a proximate causal relationship between the defect and these incidents. Hence, the plaintiff has not established that this Basic Building

Code violation was of such a nature as to have materially affected the health and safety of the tenant.

R.C. 5321.04 requires, however, that the landlord "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition."

The evidence demonstrates that the tenant rented an apartment with a carpeted basement unit, therefore intending to utilize the basement area as a habitable section of the apartment. However, the basement leaked as snow melted and also leaked after a rain. The leaks would substantially saturate the basement carpeting. The landlord was put on notice of this condition twenty-three days after the tenant entered into possession. As the carpet dried, mildew would grow and the odor would permeate not only the basement area, but throughout the apartment by the furnace, located within that area of the apartment.

Despite an attempt by the landlord to remedy the condition by applying cement and/or concrete to the interior basement walls, the basement continued to leak and soak the carpet.

There was no evidence that would indicate that any weather conditions present in March 1994 would have prevented the physical ability to correct this problem.

■ The court finds that the lease agreement between the landlord and tenant is essentially a contractual relationship with an implied warranty of habitability. In addition to this contractual responsibility, the landlord has a statutory obligation to maintain the premises in a habitable condition pursuant to R.C. 5321.04.

■ In considering the materiality of a breach of either the implied contractual warranty or the statutory obligation, both the seriousness of the claimed defect in the premises and the length of time for which it persists are relevant factors, and each case must turn on its own facts. See *Lemle v. Breeden* (1969), 51 Hawaii 426, 462 P.2d 470.

■ Proof of a breach of the warranty of habitability is not an easy burden for the tenant to bear, since not every transient inconvenience of living attributable to the condition of the premises will be a legitimate subject of litigation. The warranty is one of habitability and is not a warranty against all discomfort and inconvenience. *Academy Spires v. Jones* (1970), 108 N.J.Super. 395, 261 A.2d 413. Thus, the breach must be so substantial as to amount to a constructive eviction.

■ Utilizing this analysis, the court finds that the lease agreement between the parties was for possession of an apartment that included a carpeted basement

fit for daily use. The very object of the lease was for the defendant landlord to furnish the plaintiff tenant with quarters suitable for living purposes, and this is at least what the landlord had impliedly represented it had available for the tenant. It was therefore implied that the entire apartment that was rented for residential purposes was fit for that purpose at the inception of the lease term and would remain so during the entire term of the lease. *Marini v. Ireland* (1970), 56 N.J. 130, 265 A.2d 526.

In the case before the court, the evidence fails to demonstrate that the defect in the stairway was of such a substantial nature as to render the unit uninhabitable. Further, the court finds the rattling air vent, while an occasional nuisance, did not necessarily rise to the pervasive and persistent level needed to create an uninhabitable condition. The electrical outlet and hole in the bedroom door would also not meet the requirements necessary to be considered such a condition.

However, the leaking basement, resulting in thoroughly soaked carpeting and resultant mildew and its odors did constitute a condition that would affect the habitability of the apartment. This finding is based upon the facts established by the evidence that the apartment was rented to the plaintiff with a carpeted basement, leading the tenant to believe that the basement was indeed a habitable part of the unit. Further, whenever it would rain or even when the snow melted, the leak was substantial. That continuing condition and the resultant mildew made the basement uninhabitable. The plaintiff was effectively unable to utilize the basement, which represented a substantial deprivation of the premises. The basement represented approximately one third of the apartment.

The court further finds that this breach of the warranty of habitability resulted in a constructive eviction of the tenant. A party who is constructively evicted is entitled, as far as it is possible to do so, to a monetary award in order to be placed in the position that the tenant would have been in had the constructive eviction not occurred, keeping in mind the purpose for which the premises were leased. See *Cappadora Realty Corp. v. Studio R, Inc.* (Dec. 31, 1987), Cuyahoga App. No. 53004, unreported, 1987 WL 32123.

Ohio courts have held that where a landlord breaches a promise to make repairs to the leased premises, a proper measure of the tenant's damages is "the difference between the rental value of the premises in the condition they were in without such repair and what the rental value would have been if the repairs had been made." *Cochran v. Widra* (App.1931), 35 Ohio Law Abs. 608, 611, 41 N.E.2d 875, 877. See, also, *Holder v. Farmakis* (App.1951), 66 Ohio Law Abs. 279, 282, 117 N.E.2d 491, 494. The "diminution-in-value" rule, as pointed out by the *Cochran* court, is supported by the weight of authority from other jurisdic-

tions. See 49 American Jurisprudence 2d (1970) 812, Landlord and Tenant, Section 844. Accord Annotation (1953), 28 A.L.R.2d 446, 481. See *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 513 N.E.2d 737.

The rent amount is presumptive evidence of the rental value of the premises as repaired, but it is not conclusive. Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property.

The Ohio Supreme Court has further held that a lessee of real property is competent to give opinion testimony as to the rental value of the leased premises. The weight accorded to such testimony is, of course, a matter to be determined by the trier of fact. See *Smith v. Padgett, supra,* 32 Ohio St.3d at 348, 513 N.E.2d at 740–741.

The testimony establishes that the monthly rental was $750 for this three-story unit. The plaintiff testified that the diminution in value would have been one-third of the total amount, with this figure being based upon the inability to utilize the basement. That amount would be $250.

The court therefore finds that the plaintiff is entitled to reimbursement for the diminution in rental value of his unit in the amount of $250 per month. The evidence establishes that although he entered into possession in March 1994, the agreement of the parties was that rent would not be payable for that month. Rent was paid for the months of April, May and June 1994. The facts establish that the tenant surrendered possession of the premises on June 16, when keys were surrendered to the landlord.

Although the mailbox keys were not surrendered until sometime in July 1994, the evidence established that the keys were distributed by the United States Postal Service and, further, there was no evidence to indicate that the mailbox was even a part of the apartment unit. As a result of these findings, it cannot be held that retention of the mailbox keys would amount to possession of the premises.

The remaining issues in this case arise from the landlord's deductions from the tenant's deposit in the amount of $150.

R.C. 5321.16 governs the procedure to be used for the return of a security deposit. That section states, in pertinent part, as follows:

"(B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized

and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession.

" * * *

"(C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees."

The undisputed evidence establishes that the landlord did not provide an itemized list of the deductions from the tenant's security deposit. The tenant did indicate, in writing to the owner, the address as to where to forward the security deposit.

The defendant indicated that the $150 was first used to apply toward unpaid rent, then to payment of an unpaid water bill in the amount of $27.11, and then to shampoo carpet, pursuant to the lease terms.

However, it is well settled that a provision in a lease agreement regarding carpet cleaning that is inconsistent with R.C. 5321.16(B) is unenforceable. *Albreqt v. Chen* (1983), 17 Ohio App.3d 79, 17 OBR 140, 477 N.E.2d 1150. To the extent that the lease agreement requires carpet cleaning costs to be deducted from the security deposit, independent of any evidence of damage above ordinary wear and tear, this provision of the lease is unenforceable.

Upon inspection by the landlord, there was no damage to the premises attributable to the tenant, nor was there evidence of any damage beyond normal wear and tear. Although the lease refers to a carpet cleaning deduction, such a lease term is inconsistent with the provision of R.C. 5321.16(B) and, as such, is unenforceable.

The evidence is further undisputed that the tenant was obligated to pay the unpaid water bill.

Thus, at the time that the tenant surrendered possession of the premises, the tenant was owed the sum of $750, representing diminished value in the amount of $250 per month for the months of April, May, and June 1994.

The landlord was owed the sum of $27.11 at the time the tenant vacated the premises.

Under R.C. 5321.16(B), any security deposit deductions must be itemized and failure to comply with this section can subject the landlord to damages in double the amount wrongfully withheld, plus reasonable attorney fees. See *Nolan v. Sutton* (1994), 97 Ohio App.3d 616, 647 N.E.2d 218.

■ The court finds that the sum of $122.89 was wrongfully withheld from the security deposit and, since the landlord failed to comply with the provisions of R.C. 5321.16(B), the plaintiff is entitled to double damages in the amount of $245.78.

■ The court further finds that since there was a constructive eviction of the plaintiff, the plaintiff should be awarded judgment on the defendant's counter-claims, which were based upon unpaid rent for the balance of the lease agreement.

### *JUDGMENT ENTRY*

Based upon these findings of fact and conclusions of law, it is therefore ordered that judgment be awarded in favor of the plaintiff in the amount of $995.78, in addition to reasonable attorney fees to be established at hearing.

It is further ordered that judgment be awarded in favor of the plaintiff on the defendant's counterclaim.

It is further ordered that this case be referred to the office of the assignment commissioner for hearing on the issue of the plaintiff's attorney fees.

*Judgment accordingly.*