OPINION
CMB Partnership, d.b.a. Greenfield Station Apartments ("CMB"), appeals from a judgment of the Montgomery County Court, Area One, which refused to award damages against Lashanda E. Baker for an alleged breach of a lease agreement.
Baker lived in a one-bedroom unit in the Greenfield Station Apartments prior to 1996. In May 1996, she signed a one year lease to move into a two bedroom unit within the same complex in September 1996. The lease term was from September 1, 1996 through August 31, 1997, and the rent for the new unit was $499 per month. Baker vacated that unit in March 1997, before the end of the lease term, claiming that CMB had failed to make needed repairs despite repeated requests and that the unit was not in a fit and habitable condition. On May 17, 1999, CMB filed a complaint against Baker seeking $2,495, equivalent to five months' rent for the balance of her lease term, plus interest. The matter was tried to the court on December 21, 1999. The trial court concluded that CMB was not entitled to any additional rent because Baker "terminated the lease agreement in question due to [CMB's] breach of landlord duties" under R.C. 5321.07(A).
CMB raises three assignments of error, all of which are based on the weight of the evidence. Because of their similarity, and because CMB does not present separate arguments with respect to each assignment of error, we will discuss these assignments together.
 I. THE TRIAL COURT ERRED IN ITS FINDING THAT THE DEFENDANT-APPELLEE BREACHED HER LEASE WITH PLAINTIFF-APPELLANT WITHOUT LIABILITY UNDER O.R.C. 5321.07.
 II. THE TRIAL COURT ERRED IN ITS FINDING THAT THE PLAINTIFF-APPELLANT BREACHED LANDLORD DUTIES UNDER O.R.C. 5321.07.
 III. THE TRIAL COURT'S FINDING, GIVEN THE FACTS AND PRESENTED EVIDENCE, IS NOT COMPATIBLE OR CONSISTENT WITH NEITHER [SIC] STATUTES O.R.C. 5321.04 AND 5321.07, OR CASE LAW REGARDING CONSTRUCTIVE EVICTION, AND ACCORDINGLY MUST BE REVERSED.
CMB argues that the trial court erred in concluding that Baker had not breached the lease, that CMB had breached the lease, and that CMB had constructively evicted Baker. To facilitate our discussion of these assignments of error, we will briefly review the evidence presented at trial.
Kimberly Fantaci testified on behalf of CMB. She had been the property manager of the Greenfield Station Apartments from September 1996, shortly after Baker moved into her new unit, until January 1999. Fantaci testified that she could not recall any complaints about the apartment and that Baker "may have called in work orders" but "none c[a]me to [her] mind." Fantaci acknowledged that two certified mail receipts submitted by Baker had been addressed to the on-premises office of the Greenfield Station Apartments and to the CMB home office, but she denied ever having seen them before. She also stated that she had no idea when CMB had rerented Baker's vacated apartment.
Baker testified that the certified mail receipts admitted into evidence reflected letters that she had sent to CMB identifying problems with her unit and threatening to put her rent into escrow. Baker did not present copies of the letters, but she testified regarding their contents. One of the most serious problems identified by Baker was a leaking bathroom faucet on the upper level of the apartment, which had caused a caved-in ceiling in the kitchen below and had caused the carpeting in the lower level dining room to be wet. She also described broken shingles which allowed birds and insects into the unit and a crack in the front door that allowed air into the unit. Other problems had included broken closet doors, missing screens or screens that were "hanging off," a broken air conditioner, rust spots on the sink, walls, and tub in the bathroom which could not be cleaned off, rusting drains, a gutter that had fallen off the building, and a broken air conditioning unit on the patio which prevented her daughter from playing there. Baker testified that she had received a letter of eviction from CMB for failure to pay rent shortly after she had sent the certified letters detailing the problems with the apartment and threatening to put her rent in escrow based on the condition of the apartment. Baker stated that no repairs had ever been made in response to her letters. She also stated her belief that the notice of eviction that she had received in mid-September 1996 had been in response to her demand for repairs.
R.C. 5321.04 requires, in pertinent part, that a landlord "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." R.C.5321.04(A)(2). It also requires that a landlord maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances. R.C. 5321.04(A)(4). R.C. 5321.07 provides that, if a landlord fails to fulfill any obligation imposed by R.C. 5321.04, or if the conditions are such that the tenant reasonably believes that the landlord has failed to fulfill such obligations, then the tenant may give written notice to the landlord of the acts or omissions that constitute noncompliance. R.C. 5321.07(A).
 If a landlord receives the notice * * * and after receipt of the notice fails to remedy the condition within a reasonable time considering the severity of the condition and the time necessary to remedy it, or within thirty days, whichever is sooner, and if the tenant is current in rent payments due under the rental agreement, the tenant may do one of the following:
* * *
(3) Terminate the rental agreement.
R.C. 5321.07(B).
First, CMB contends that Baker was not entitled to the relief afforded by R.C. 5321.07 because, "despite [Baker's] testimony of what she says she mailed, without the actual, or at least an exact copy of the alleged written notice itself, the trial court could not have properly determined whether or not Baker complied with the statute." We disagree. Baker's testimony, without more, was sufficient evidence from which the trial court could have concluded that she had mailed to CMB the written notice required by R.C. 5321.07(A), assuming that it found her to be credible. The trier of fact is entitled to deference on issues of credibility because of its ability "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. Moreover, CMB did not present any evidence that the certified mailings that it had received had contained some other type of notice or document. The trial court's implicit finding that Baker had satisfied the written notice requirement of R.C.5321.07(A) was not against the manifest weight of the evidence.
Second, CMB claims that "the evidence at trial suggests that Baker was not current with her rent," a fact that would have made her ineligible to terminate her rental agreement pursuant to R.C.5321.07(B). In our view, there is little evidence, if any, to suggest that Baker had not paid her rent while living at Greenfield Station. Although Baker had admittedly threatened to put her rent in escrow, she testified that she had not done so. It cannot reasonably be inferred from this testimony that Baker had, therefore, not paid rent at all. Moreover, the evidence suggests that CMB made no genuine effort to evict Baker in the seven months following its initial notice of eviction for non-payment of rent, and CMB's complaint did not allege that it was owed any rent for the months preceding Baker's departure from the leased premises. Under these circumstances, the trial court could have reasonably rejected CMB's claim that Baker had not been entitled to relief pursuant to R.C. 5321.07(B) on the basis that she had not been current on her rent.
Third, CMB claims that the trial court erred in its determination that the leased premises had been uninhabitable. It claims that the very fact that Baker lived in the apartment for seven months proves that it was not uninhabitable. CMB challenges the seriousness of the problems reported by Baker and points out that "[t]here was no evidence of roach infestation, rodent problems, live wires, open pipes, defective wiring, flooding, and the like that typically characterize unhabitability."
We disagree with CMB's assessment of the seriousness of Baker's complaints and with its implicit suggestion that, if the problems were not sufficiently serious to pose a health risk, it was not required to fix them at all. Baker testified that water from her upstairs bathroom had leaked down the wall and had kept her dining room carpet wet. In our view, a carpet that is wet over a period of seven months due to leaky plumbing creates an unfit and inhabitable condition and clearly violates a landlord's duty, pursuant to R.C. 5321.04(A)(4), to maintain plumbing in good and safe working order. See Weingarden v. Eagle Condominiums
(1995), 71 Ohio Misc.2d 7, 14 (holding leaking basement resulting in wet carpet and mildew in living area made portion of apartment uninhabitable and represented a substantial deprivation of the premises). On this basis alone, the trial court could have reasonably concluded that CMB had breached its duties under R.C.5321.04. The trial court also could have reasonably rejected CMB's claim that the inoperable air conditioning in Baker's apartment was immaterial because Baker's tenancy had not encompassed the hottest months of the year. R.C. 5321.04(A)(4) requires a landlord to keep air conditioning in good working order without regard to season. See, also, Howard v. Simon (1984),18 Ohio App.3d 14, 15-16 (finding R.C. 5321.04(A)(4) requires an air conditioner to perform when needed, regardless of outside temperature). Moreover, the trial court could have reasonably found that the state of the roof and ventilation systems, which had allowed birds and insects to enter the apartment, had created an unfit and unsanitary condition.
 We also point out to CMB that R.C. 5321.07(B) gives a landlord thirty days, at the most, to remedy a condition that violates the obligations imposed by R.C. 5321.04 or that a tenant reasonably believes to violate those obligations. In light of the fact that CMB apparently made no effort over a period of seven months to remedy the problems identified by Baker, some of which certainly violated the obligations imposed by R.C. 5321.04, the trial court reasonably rejected CMB's claim that Baker had improperly terminated the lease.
The assignments of error are overruled.
The judgment of the trial court will be affirmed.
 _________________________ WOLFF, J.
FAIN, J. and YOUNG, J., concur.