[Cite as *Buckalew v. Concord Manor, Ltd.*, 2025-Ohio-1359.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| CHAD A. BUCKALEW, | : | | JUDGES: |
| | : | | Hon. Andrew J. King, P.J. |
| Plaintiff - Appellant | : | | Hon. Robert G. Montgomery, J. |
| | : | | Hon. Kevin W. Popham, J. |
| -vs- | : | | |
| | : | | |
| CONCORD MANOR, LTD., et al., | : | | Case No. 2024 CA 00041 |
| | : | | |
| Defendant - Appellees | : | | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Fairfield County
                            Common Pleas Court, Case No.
                            2022 CV 00645

JUDGMENT:                   Affirmed

DATE OF JUDGMENT:           April 15, 2025

APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

JOSHUA R. KEMME                        JOSEPH G. BOGDEWIECZ
JORDAN R. WOLFE                        JENNIFER L. WILSON
JOSEPH F. PFLUM                        Freund, Freeze & Arnold
O'Connor, Acciani & Levy               620 E. Broad Street, Suite F
600 Vine Street, Suite 1600            Columbus, OH  43215
Cincinnati, OH  45202

*Montgomery, J.*

{¶1} Plaintiff-Appellant, Chad Buckalew, appeals from the trial court's decision granting summary judgment in favor of Defendant-Appellees, Concord Manor, LTD, and Concord Manor II, LLC, determining that no genuine issue of material fact existed, and that Appellees did not violate their statutory duty under R.C. 5321.04(A)(2). For the reasons below, we affirm.

## STATEMENT OF THE CASE

{¶2} This matter arises from a slip and fall Chad Buckalew ("Appellant") suffered in his apartment that he leased from Appellees, Concord Manor, Ltd., and Concord Manor, II, LLC ("Concord"). Appellant filed this action in the Fairfield County Common Pleas Court alleging negligence per se under R.C. 5321.04(A)(2). On January 31, 2024, Concord filed a Motion for Summary Judgment, arguing there was no genuine issue of material fact that Concord was liable. On September 16, 2024, the trial court issued its detailed decision granting Concord's motion for summary judgment. On October 15, 2024, Appellant timely filed a notice of appeal. Appellant claims the trial court improperly granted summary judgment because genuine issues of material fact exist as to whether a leaky pipe under Appellant's kitchen sink rendered the apartment unfit and uninhabitable.

## STATEMENT OF FACTS

{¶3} Based on the evidence in the record, the undisputed and relevant facts are as follows. On September 28, 2020, Appellant entered into a lease agreement with Concord for an apartment located at 129 W. Walnut Street, Apt. J, Lancaster, Ohio. Appellant Depo., Exhibit 1. By virtue of the lease, a landlord and tenant contractual

relationship existed between Appellant and Concord. Concord utilized a maintenance repair process and provided maintenance request forms in the laundry room for a tenant to fill out whenever he or she encountered a problem in the apartment. Appellant confirmed this procedure for reporting problems/issues and added " [o]r text Sam [Iser] to let him know". Sam Iser ("Iser") is the owner of the subject property. The maintenance man, Donald Anderson ("Anderson"), collected the workorders each day, Monday through Friday.

{¶4} On or about June 14, 2021, Appellant noticed two separate leaks – one in his bathroom sink and one near the kitchen sink. Appellant testified that when he turned on the kitchen sink, and only when the water was running, the floor became wet. That same day, rather than filling out the form, Appellant texted Iser, and informed him that the kitchen sink was leaking and needed repaired. Appellant's text stated:

Sorry to bother you on this fine work day * * * but I need to get the maintenance man into my apartment. The bathroom sink is dripping water again and I'm afraid it will jack my water bill higher. Also there might be, [not] sure, but might be a leak somewhere in the kitchen either under the sink or out of fridge. I have water on the floor every day. I mop it up but reappears. Thank you for your time and hard work.

Buckalew Depo. p. 129; Exhibit 2.

{¶5} A few hours later, Iser replied: "I'm sorry who is this", Id., pp. 130-31; Exhibit 2. Appellant responded: "'My bad. Chad Buckalew." Upon receipt of the text messages from Appellant, Iser contacted the maintenance man, Anderson, to make the necessary repairs:

I had contacted Mr. Anderson when [Appellant] had sent me the text message. And then I would talk with Mr. Anderson on a daily basis. With the number of units that are there, I would talk with Mr. Anderson. I spoke with Mr. Anderson, and Mr. Anderson reassured me that there was no leak - or that he had fixed the leak.

Iser Depo., p. 22.

{¶6} Similarly, Anderson testified that "two or three days prior to [Appellant's] fall," he repaired the plumbing under the kitchen sink by replacing an "0-ring" that had come off. Anderson testified that after he made the repair, the sink was no longer leaking. Anderson Depo, pp. 23-24.

{¶7} Appellant also testified as follows:

Q: Okay. So its possible that the maintenance man came in and repaired to the best of his ability whatever leak there was between June 15th and June 24th?

A: That is - that is possible. yes.

Q: Okay. And then there's, according to Exhibit 2, no other notification that the leak reappeared?

A: That is correct.

Appellant Depo., p. 136.

{¶8} After making this report, Appellant testified that he did not use the sink in his kitchen for ten (10) days because he was busy working and did not have an opportunity to make a meal in the kitchen. However, on June 24, 2021, Appellant used

the kitchen sink to clean some dishes after dinner. Appellant testified that water went all over the floor; Appellant slipped and fell and sustained significant injuries.

{¶9} Despite these injuries, the Trial Court held:

[T]he leaky pipe under the kitchen sink did not render the premises in this matter unfit or uninhabitable. Indeed, there is no serious contention by the Plaintiff that the leaky faucet "made the premises unfit for human habitation." *Lewis v. Wall*, 2008-Ohio-3387, ¶ 38 (11th Dist.). "The concept of fitness and habitability is concerned with defects that force a tenant to endure serious deprivations or basic needs or threats to the tenant's health or safety ... ", *Wilmoth v. Akron Metro Housing. Auth.*, 2016-Ohio-3441, ¶ 21 (9th Dist.). A detailed survey of the cases discussing fitness and habitability from appellate districts throughout the state has not yielded any basis for this Court to hold otherwise.

See *Buckalew v. Concord Manor LTD*, Fairfield C.P. No. 22 CV 645, ¶ 11.

## ASSIGNMENT OF ERROR

{¶10} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS-APPELLEES MOTION FOR SUMMARY JUDGMENT AND FINDING AS A MATTER OF LAW THAT DEFENDANTS-APPELLEES DID NOT VIOLATE ITS STATUTORY DUTY UNDER R.C. 5321.04(A)(2)."

## SUMMARY JUDGMENT STANDARD OF REVIEW

{¶11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). Accordingly, this Court reviews a trial court's award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

**{¶12}** Civ. R. 56(C) states in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

**{¶13}** Thus, summary judgment may be granted only after the trial court determines that: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds *can come to but one conclusion* and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

**{¶14}** Summary judgment consists of a burden-shifting framework. *Dresher v. Burt,* 75 Ohio St.3d 280, 294 (1996). The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. Once this burden is met, the burden shifts to the nonmoving party. *Id.* According to Civ.R. 56(E), the nonmoving party may not rest on mere

allegations or denials in their pleadings but must set forth specific facts showing a genuine issue for trial. *Id.* at 293.

{¶15} To defeat a motion for summary judgment filed by a defendant in a *negligence action*, this Court recognizes a plaintiff must identify a duty owed him by the defendant, and the evidence must be sufficient, considered most favorably to the plaintiff, to allow reasonable minds to conclude the duty was breached, and that the breach of duty was the proximate cause of plaintiff's actual injury. *Boushack v. Grisez Inv., L.P.,* 2016-Ohio-355, ¶ 10 (5th Dist.) (affirming summary judgment to landlord under theory of negligence per se pursuant to R.C. 5321.04). Further, a court may resolve whether a defect makes the premises unfit and uninhabitable as a matter of law on summary judgment. *Pease v. Croxton Realty*, 1992 WL 362463, *3 (5th Dist.).

{¶16} As stated above, the trial court specifically found "that the leaky pipe under the kitchen sink did not render the premises * * * unfit or uninhabitable." On appeal, Appellant argues the trial court improperly granted summary judgment and finding that Concord did not violate its statutory duty under R.C. 5321.04(A)(2). Appellant argues that he sustained a traumatic fall in his apartment kitchen as the result of water on the floor due to a leaking pipe under the sink and Concord's failure to properly fix the leak constitutes a violation of R.C. 5321.04(A)(2), constituting negligence per se.

## LAW AND ANALYSIS

{¶17} R.C. 5321.04 requires landlords to perform certain duties on behalf of its tenants. In relevant part, R.C. 5321.04(A) states a landlord who is a party to a rental agreement shall do all the following: (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety; (2)

Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition. (Emphasis added.) Here, Concord is a party to the rental agreement with Appellant and required to comply with the statutory duties.

**{¶18}** Ohio courts hold that a landlord's violation of the duties set forth in R.C. 5321.04 constitutes negligence per se. *Carter v. Forestview Terrace L.L.C.,* 2016-0hio-5229, (8th Dist.), at 25, citing *Person-Thomas v. Quilliams-Noble Apartments. L.L.C.,* 2015-0hio-4277, (8th Dist.), at 14 (citation omitted); *Robinson v. Bates,* 2006-0hio-6362, ¶¶ 22-23. The *Robinson* court made clear that negligence *per se* allows the plaintiff to prove both (1) duty and (2) breach of duty by showing that the defendant committed or omitted a specific act prohibited or required by statute. *Dabe v. M.K. Hufford Co.,* 2022-Ohio-2802, ¶ 26 (2d Dist.), citing *Lang v. Holly Hill Motel, Inc.,* 2009-0hio-2495, ¶ 15.

**{¶19}** However, negligence per se is not necessarily equivalent to a finding of liability per se because the plaintiff must still prove proximate cause and damages. *Robinson*, ¶ 23; see also *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, (1998). Negligence per se is also different from strict liability, in that a negligence-per-se violation will not preclude defenses and excuses, unless the statute clearly contemplates such a result. *Robinson*, ¶ 23. Most statutes are construed to require that the actor take reasonable diligence and care to comply, and if after such diligence and care the actor is unable to comply, the violation will ordinarily be excused. *Robinson*, ¶ 23; *Shroades v. Rental Homes*, 68 Ohio St.2d 20, 25-26, 427 N.E.2d 774 (1981).

**{¶20}** The purpose of R.C. 5321.04 is to protect persons using rented residential premises from injuries. See, *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 25 (1981). Thus, to demonstrate a landlord's breach of its statutory duty, courts have placed a

relatively high burden on plaintiffs alleging defects under R.C. 5321.04(A)(2). A plaintiff must show that the premises are *unfit and uninhabitable*. *January Invests, LLC v. Ingram*, 2010-Ohio-1937, ¶ 26 (12th Dist.); *Cipollone v. Hoffmeier*, 2007-Ohio-3788, ¶ 22 (1st Dist.); *Wenzke v. Baird*, 2014-0hio-3069, ¶ 18 (6th Dist.).

**{¶21}** Indeed, Ohio courts have held that to run afoul of R.C. 5321.04(A)(2), thereby violating the duty to keep the premises in a fit and habitable condition, defects must be "so substantial" as to amount to a "constructive eviction."[1] *Cipollone*, ¶ 22 (stating that defects must be so substantial *as* to amount to a "constructive eviction" such that window latches are not necessary for a property to be habitable); *January Invests,* ¶ 26 (articulating that the purpose of [R.C. 5321.04] is to protect persons using rented residential premises from injuries; such that light fixtures, landscaping, blinds and chimney sweeps etc. are not within the reach of the Ohio Landlord Tenant Act); *In re V.R.*, 2014-Ohio-5061 ¶ 12 (1st Dist.); *Wenzke v. Baird*, 2014-0hio-3069, ¶¶ 17, 18; *Dabe*, ¶¶ 41-43 (upholding trial court's granting of summary judgment to landlord; recognizing its prior caselaw that "[t]he meaning and interpretation of the statutory phrase 'fit and habitable' will not be liberally construed to include that which does not clearly fall within the import of the statute); *Pedra Properties, LLC v. Justmann*, 2015-0hio-5427, ¶ 19-20 (8th Dist.).

**{¶22}** Conditions or defects that are a mere annoyance or inconvenience do not render the premises unfit or uninhabitable. Fitness and habitability include such defects as lack of water or heat, faulty wiring, or vermin infestations. *Pedra Properties*, ¶ 19-20;

---

[1] Constructive eviction occurs when the landlord interferes with the tenant's possession and enjoyment of the premises, and the acts of interference by the landlord compel the tenant to leave.

see also, *Stiffler v. Canterbury Runn Apts.,* 2002–Ohio–5382 (2d Dist.), ¶ 11 (apartment "infiltrated by leaking water, sewage, growing mold, soaked carpets, and a sagging ceiling" was uninhabitable); *Bogner v. Titleist Club, LLC,* 2006–Ohio–7003 (6th Dist.) (finding no constructive eviction and breach of the warranty of habitability based on "persistent moisture/mold/mildew problems" where, "although annoying and perhaps the cause of some discomfort", tenants presented no evidence to establish that the mold constituted a hazard that was serious enough to require tenants to vacate the premises); *Ruble v. M&L Properties, Ltd.,* 2010–Ohio–6356, ¶ 53–56 (5th Dist.); *Gress v. Wechter,* 2013-Ohio-971 (6th Dist.) (recognizing a defect must render premises unfit and uninhabitable and does not include such items as missing handrails); *Mullins v. Grosz,* 2020-Ohio-3844, ¶ 34 (10th Dist.) (finding that lack of a handrail or gating in walkway area did not render the premises unfit and uninhabitable); *Roundtree v. Byrd,* 2024-Ohio-5511, ¶ 13 (2d Dist.) (reiterating that R.C. 5321.04(A)(2) requires the defects in the premises to be so substantial as to amount to constructive eviction); *Wilmoth v. Akron Metro. Hous. Auth.,* 2016-Ohio-3441, ¶ 21-22 (9th Dist.) ("serious deprivations of basic needs or threats to the tenant's health or safety" are required); *Wenzke v. Baird,* 2014-Ohio-3069, ¶ 18-20 (6th Dist.) (warranty is one of habitability).

**{¶23}** Here, we conclude the undisputed facts show that Concord did not violate its statutory duty under R.C. 5321.04(A)(2). There is no evidence that the water leak, or lack thereof, impacted Appellant's ability to use his apartment. In fact, Appellant's apartment *remained habitable.* On June 14, 2021, Appellant notified landlord Iser of the leak; Iser contacted Anderson and Anderson testified that he repaired the leak several days before Appellant's fall. Iser confirmed with Anderson that the leak was repaired.

*Assuming the leak reappeared*, Appellant did not notify Concord such that Concord could not have known that it returned. Appellant Depo., pp. 134-136. Appellant continued to live in the apartment for nearly 10 days without any issues or problems.

**{¶24}** Buckalew maintains Concord breached its statutory duty R.C. 5321.04(A)(2) because the leak reappeared. In support, Appellant cites *Weingarden v. Eagle Ridge Condominiums,* 71 Ohio Misc.2d 7, 13 (1995). In that case, the court found that a continuously leaking basement rendered the apartment uninhabitable such that it was a "substantial deprivation of the premises." *Id.* at 14. However, the facts of *Weingarden* are quite distinguishable from the facts here. *Weingarden* involved a "continuous condition," namely a leaking basement, resulting in thoroughly soaked carpeting with resultant mildew and a terrible odor. The court also emphasized that the basement comprised 1/3 of the apartment and the tenants relied on that specific space when they entered the lease. Under those facts, the court determined that due to the constant water and resultant mildew, the tenant was unable to use the space and established its uninhabitability. *Id.*

**{¶25}** The present facts are nowhere close to the facts contained in *Weingarden*. Appellant testified that *he did not even attempt to use* his kitchen sink for nearly 10 days, by his own choice because he was too tired and lazy to cook, and did not have a need to use it. Importantly, Appellant did NOT testify that he didn't use the sink because it was leaking. Had the leak flooded Appellant's apartment, this may be a different case. It did not. In the final analysis, even if the leak was not repaired (which, based on the evidence before the court, it was repaired) or if the leak was repaired and reappeared, the defect was not so substantial *as* to amount to a "constructive eviction." Appellant's testimony

that he chose not to use the kitchen sink for 10 days completely undermines his claim. Simply stated, there is no evidence to suggest that the leak resulted in a serious deprivation of Appellant's basic needs or threatened his health or safety. Thus, Appellant cannot demonstrate that Concord breached its duty under R.C. 5321.04(A)(2). Without a breach of duty, negligence fails as a matter of law.

**{¶26}** It seems Appellant contends for the first time on appeal that the leak left him "without water" in his kitchen for 10 days, deprived him of basic necessities, created a safety hazard, and "effectively made it impossible for [him] to safely utilize the kitchen * * *". Appellee Brief, p. 13. The trial court certainly did not address this argument. It is well established that a party cannot raise arguments and issues for the first time on appeal that he or she failed to raise before the trial court. *Deutsche Bank Natl. Trust Co. v. Hill*, 2015-Ohio-1575 (5th Dist.) ("It is well-settled law in Ohio that appellate courts will not consider as error issues that are raised for the first time on appeal"), citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210 (1982).

**{¶27}** Assuming Appellant somehow preserved this argument on appeal, we conclude that there is no evidence to support the contention. In fact, Appellant testified that between June 15 and June 24:

> I never had the water on. I was never in my kitchen cooking or doing
> anything. I was either too lazy to cook and I would stop and get food, or I
> was coming in late and there was no way I'm cooking meals.
> Appellant Depo., p. 135.

Appellant may not rest on mere allegations or denials in his pleadings but must set forth specific facts showing a **genuine** issue for trial. Although we are sympathetic to

Appellant's injury after the fall, reasonable minds *can come to but one conclusion* and viewing such evidence most strongly in favor of Appellant, there is no evidence to support Appellant's position that Concord breached its statutory duty to maintain the premises in a fit and habitable condition. **Accordingly, summary judgment is proper and Appellant's sole assignment of error is overruled.**

## CONCLUSION

{¶28}  For the reasons above, Appellant's sole assignment of error is overruled, and the judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Montgomery, J.

King, P.J. and

Popham, J. concur.