In the Matter of WILLIAM SWIERUPSKI, Appellant, v GABRIEL S. KORN, as One of the Commissioners of the Nassau County Civil Service Commission, et al., Respondents.

Second Department, July 30, 1979

## APPEARANCES OF COUNSEL

*Westfal & Kiernan (Gary F. Westfal* of counsel), for appellant.

*Robert Abrams, Attorney-General (Gale D. Berg* and *George D. Zuckerman* of counsel), for Frank J. Rodgers, Commissioner of Division of Criminal Justice Services, and others, respondents.

*Edward G. McCabe, County Attorney (Robert O. Boyhan* of counsel), for Gabriel S. Korn, as one of Commissioners of

Nassau County Civil Service Commission, and others, respondents.

**OPINION OF THE COURT**

SHAPIRO, J.

Petitioner instituted this CPLR article 78 proceeding, *inter alia,* for a judgment directing that he be returned to his position on the eligibility list for police officer (he had been removed from the list because the respondent Nassau County Civil Service Commission [the commission] determined that he failed to medically qualify as a police officer because of defective color vision), and to declare the standards promulgated by the respondent Municipal Police Training Council to measure color blindness to be arbitrary, capricious and unreasonable. Special Term (ALTIMARI, J.), held that the proceeding was time-barred. I disagree.

THE FACTS

On September 23, 1977, while taking the physical examination for police officer, petitioner was informed that he was disqualified because he had failed the test for color perception. Thereupon he was furnished with the commission's form of "Notice of Medical Examination Results" in which checkmarks were placed before the following statements: "You failed the medical for the above examination for the following reason(s)" and "Defective color vision". On the bottom of this form there appear petitioner's signature and the date ("9/23/ 77") under the statement "I acknowledge being informed of the results of this part of the medical and have received a copy of this notice."

On November 15, 1977, less than two months after petitioner received that notice, his attorney wrote to Ms. Leonard, the Executive Director of the commission. The letter states:

"On September 23, 1977, our client, Mr. William Swierupski * * * was advised while taking the physical examination for police officer that he had not qualified because he was color blind.

"This came as a surprise to Mr. Swierupski because he had previously passed the physical for Nassau Police Cadet in 1972, and had also passed the physical examination, including color vision tests, for police officer in both Baltimore and New

York City. Subsequent to the exam on September 23, Mr. Swierupski was examined by two ophthalmologists for color blindness and both doctors stated that Mr. Swierupski was not color blind.

"The failure of Mr. Swierupski to pass the test on September 23, 1977, is puzzling especially in view of the fact that he was once certified as physically fit to be a Nassau Police Cadet. Therefore, I would respectfully request that you answer the following questions:

"1. Has the color vision or blindness test been changed, modified or upgraded for Nassau Police since 1972?

"2. If the answer to the above is yes, when was it changed and on what basis and for what reasons was it done?

"3. What is the name of the test used and is it a standard test used in physical examinations for police officers? Is it used by other departments such as Suffolk, New York City and the State Police?

"4. Is there a possibility of Mr. Swierupski taking an equivalent alternative test which would qualify him as a police officer?

"5. Will the Commission accept the results of vision tests conducted by ophthalmologists licensed by the Board of Regents concerning Mr. Swierupski's color vision?

"I realize these questions are comprehensive; however, I think if you examine his record you will find how much Mr. Swierupski desires to be a police officer. Having once passed a test in Nassau County, and now being told he is not qualified is a great disappointment. Accordingly, I would greatly appreciate your response to this inquiry."

Six days later, on November 21, 1977, Ms. Leonard responded as follows:

"This is in response to your letter of November 15, 1977, in connection with Mr. William Swierupski * * * concerning his disqualification on the Police Officer examination on the basis that he failed to meet the color vision requirements.

"In answer to your questions the following is submitted:

"1. The standards that were in effect in 1972 were changed in November, 1974. The 1972 standards did make allowance for an alternate color vision test which Mr. Swierupski successfully met.

"2. The standards for Police Officers are established by the

Municipal Police Training Council, State of New York. It is suggested that you contact that agency to determine their reasons for the revision.

"3. The name of the test that is used in the current testing for Examination No. 66-676, Police Officer, is the Ishihara Test for color perception. These standards as prescribed by the Municipal Police Training Council, State of New York, apply to all jurisdictions within the State of New York with the exception of New York City.

"4. Under the Council standards there is presently no equivalent alternate test which would qualify Mr. Swierupski as a Police Officer.

"In response to your final question, the Commission cannot accept the results of vision tests from outside physicians."

On January 23, 1978, exactly four months after petitioner was advised of his failure, he procured the order to show cause in this article 78 proceeding, but service was not made until the following day.

### THE LAW

The four-month limitation provision of CPLR 217 would ordinarily bar this proceeding (see *Matter of Tombini,* 177 Misc 148, affd 262 App Div 956). I hold, however, that since petitioner was not advised of his right to submit facts in opposition to his disqualification the limitation period never started running.

Subdivision 4 of section 50 of the Civil Service Law (entitled "Disqualification of applicants or eligibles"), in relevant part, states: "The state civil service department and municipal commission may refuse * * * after examination to certify an eligible * * * (b) who is found to have a physical * * * disability which renders him unfit for the performance of the duties of the position in which he seeks employment, or which may reasonably be expected to render him unfit to continue to perform the duties of such position * * * No person shall be disqualified pursuant to this subdivision unless he has been given a written statement of the reasons therefor *and afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification"* (emphasis supplied).

Here, petitioner was given a written statement of the reasons for his disqualification but he was never furnished with a written statement that he was "afforded an opportunity to

make an explanation and to submit facts in opposition to such disqualification."

Although the statute does not affirmatively state that a person who is disqualified must be furnished with a written statement that he has an opportunity to submit facts in opposition, I believe that it is necessarily implied. The phrase "afforded an opportunity" implies an active and initiatory role on the part of the commission, and in the facts and context here, that could only be fulfilled *by giving notice* to the applicant of his right to submit "facts in opposition to such disqualification." That is especially so, grammatically, where the phrase appears in the very same sentence which requires that no person shall be disqualified unless "he has been given a written statement of the reasons therefor". "[H]e has been given" means that it is the commission which (actively) gives and the disqualified applicant who (passively) is given. Similarly, "afforded an opportunity" can only mean that it is *the commission* which actively affords the opportunity and it is the disqualified applicant who is thereby passively afforded such opportunity.

The only active and initiatory role that can logically be cast upon the commission in "afford[ing] an opportunity" is that it advise the disqualified applicant that he *has* such opportunity; specifically, that he may "make an explanation and * * * submit facts in opposition to such disqualification." An interpretation that the disqualified applicant must be the initiator and active party in taking the "opportunity" (without being advised that he has it) of "mak[ing] an explanation and * * * submit[ting] facts in opposition to such disqualification", and only *then* is the commission to be moved to action, would add nothing to a disqualified applicant's rights, since every administrative determination is subject to review, both in the administrative structure (at least to permit an aggrieved person "to make an explanation and *to* submit facts in opposition") and in the courts (by an article 78 review of alleged arbitrariness, after the administrative review *has been completed).* Clearly the statute was intended to be more than a statement of platitudes. It seems to me that the Legislature intended to make certain that a disqualified applicant for a civil service position would be formally advised that he had the right and opportunity to submit facts in opposition to the adverse determination, i.e., that he must "speak now or forever hold his peace", and that it did not want to rely on the applicant's

presumed knowledge that he had such a right. The clause otherwise would be pure surplusage bereft of meaning or purpose.

Words in a statute are not to be rejected as superfluous when it is practicable to give each a distinct and consistent meaning *(New York State Bridge Auth. v Moore,* 299 NY 410; *Matter of Bailey [Bush Term. Co.],* 265 App Div 758, affd 291 NY 534). No part of a statute is to be considered meaningless or superfluous unless that conclusion is inevitable *(Direen Operating Corp. v State Tax Comm.,* 46 AD2d 191). It is not to be supposed that the Legislature placed words or phrases in a statute without having a specific purpose in mind. As stated in McKinney's Statutes (McKinney's Cons Laws of NY, Book 1, Statutes, § 231, p 389), "it is a just rule, always to be observed, that the court shall assume that every provision of the statute was intended to serve some useful purpose".

The contesting, by a disqualified applicant for a civil service position, of the fairness of a test is indeed a most valuable right and subdivision 4 of section 50 of the Civil Service Law clearly recognizes the importance of that right. We may not assume that in placing the clause in the statute that an applicant shall be "afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification" the Legislature engaged in useless rhetoric.

The requirement of such notification is clearly no great hardship to a civil service commission. All that is necessary is that the printed form of notification of failure include that simple statement. There is no reason why such a statement should not be routinely set forth and, indeed, the respondent civil service commission has done so in other cases (see *Matter of Posch v Nassau County Civ. Serv. Comm.,* 69 Misc 2d 1053).

The November 15, 1977 letter of petitioner's counsel was essentially in the form of an inquiry; it was not "an explanation", and only tangentially was it a "submit[ting] of facts in opposition" (see Civil Service Law, § 50, subd 4) in its mention that petitioner had earlier passed a color vision test and that two ophthalmologists had since examined him and determined that he was not color blind. If there had been a formal submission of facts together with an explicit request for reconsideration, it would have extended the Statute of Limitations (cf. *Matter of Fiore v Board of Educ. Retirement System of City of N. Y.,* 48 AD2d 850, affd 39 NY2d 1016) and that fact shows the danger of not advising a disqualified applicant

that he indeed *has* such opportunity. If the very notice that advised the petitioner that he was disqualified had specifically stated that he was "afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification", the letter of petitioner's counsel would doubtless have been framed in accordance with the "opportunity" set forth in the statute.

In view of the foregoing, I deem it unnecessary to determine the subtle question of whether the November 15, 1977 letter of inquiry of petitioner's attorney constituted an implied submission of facts in opposition to the disqualification, based on which the commission was required to reconsider its determination or grant a rehearing (which would have postponed the inception of the four-month limitation period at the least, to November 15, 1977) and therefore make petitioner's application timely in any event. Here, the dictum *"essentialia non sunt multiplicanda praeter necessitatem"* (known as "Occam's Razor") should be applied—that the simplest of competing theories be preferred to the more complex and subtle.

I find the conclusion of my dissenting brothers that this article 78 proceeding should be converted into an action for a declaratory judgment rather startling. The petition and the supporting affirmation of petitioner's counsel repeatedly refer to the contention that the commission's decision to measure color blindness by only one test was "arbitrary, capricious and unreasonable". That is the classic basis for the legitimacy of an article 78 proceeding. Indeed, in essence, the record demonstrates no more than the conflicting arguments of the parties as to whether the use of only one test for determining color blindness was arbitrary. Furthermore, the parties did not raise, either at Special Term or on this appeal, the appropriateness of converting this article 78 proceeding into an action for a declaratory judgment. The proposition will no doubt be as surprising to counsel, as it is to me, that one who has failed a civil service examination and been given notice of such failure, assuming that such notice was adequate, may obtain six years (see CPLR 213, subd 1; *Walsh v Andorn,* 33 NY2d 503) to contest the fairness of the test by the procedural device of instituting a declaratory judgment action (where an appropriate article 78 proceeding is time-barred) and that if he does not do so, this court will do it for him.

The question of whether a civil service examination for a particular position was sufficiently directed to the special

duties of that office (as well as the fairness of only one test for color blindness) presents an administrative and not a judicial question *(Matter of Pollak v Conway,* 276 App Div 435). Such administrative determination is not reviewable unless arbitrary and capricious and this is prima facie determinable only in an article 78 proceeding.

There is no issue here of constitutional dimensions (cf. *Sephton v Board of Educ,* 58 AD2d 600) or of the applicability of a statute to the petitioner, but only whether the commission's change of the standards for determining color blindness was arbitrary. As stated in Carmody-Wait 2d, NY Prac, vol 24, § 147:8, p 405: "[I]t is only where the constitutionality of the statute or ordinance pursuant to which the board is purporting to act, or the applicability of the statute or ordinance to the plaintiff or the subject matter, is sought to be adjudicated that an action for a declaratory judgment will lie—that is, in situations where the controversy relates to the power of the board to act at all, and a determination in favor of the plaintiff would render any further proceedings unnecessary; *where the propriety of the board's action, rather than its power to act, is in question, and an examination or consideration of the evidence is necessary, there is no authority for the maintenance of an action for a declaratory judgment"* (emphasis supplied).

Under the circumstances the judgment appealed from should be reversed and a hearing held pursuant to CPLR 7804 (subd [h]).

SUOZZI, J. (concurring). I am in complete accord with the reasoning of Mr. Justice SHAPIRO that the instant CPLR article 78 proceeding cannot be converted into a declaratory judgment action in order to avoid the strictures of the four-month Statute of Limitations (CPLR 217). I am also in accord with his conclusion that the instant article 78 proceeding was timely commenced, but I disagree with the reasons advanced for that conclusion.

Petitioner was informed on September 23, 1977, by written notice, that he failed the physical examination for police officer due to "defective color vision". He did not effectively commence this article 78 proceeding until January 24, 1978, four months and a day after petitioner received written notice that he failed the test.

Mr. Justice SHAPIRO holds that subdivision 4 of section 50 of

the Civil Service Law mandates that the petitioner be given written notice of his right to make an explanation and submit facts in opposition to such disqualification and that since petitioner was never advised in writing of those rights, the four-month limitation period never started running. I disagree with this particular interpretation of the statute.

Subdivision 4 of section 50 of the Civil Service Law (entitled "Disqualification of applicants or eligibles") states, in pertinent part: "The state civil service department and municipal commission may refuse * * * after examination to certify an eligible * * * (b) who is found to have a physical * * * disability which renders him unfit for the performance of the duties of the position in which he seeks employment, or which may reasonably be expected to render him unfit to continue to perform the duties of such position * * * No person shall be disqualified pursuant to this subdivision unless he has been given a written statement of the reasons therefor and afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification."

The statute as drafted provides that no disqualification based on physical disability can be made unless the person has been (1) given a written statement of the reasons therefor (which was effectuated here) and (2) given an opportunity (but not notice of such) to make an explanation or to submit facts in opposition to the disqualification.

Moreover, apart from the fact that the language of the statute does not clearly support the interpretation given to it by Mr. Justice SHAPIRO, such an interpretation is not even necessary to avoid the four-month Statute of Limitations.

The four-month period within which an article 78 proceeding to review a determination by an administrative body or officer can be instituted begins only after that determination becomes final. However, "[w]here the body or officer is expressly authorized (or, a fortiori, required) by statute to rehear the matter upon petitioner's application, no proceeding to review may be commenced, and, as a consequence, the limitation period does not run, unless a rehearing has been granted or denied, or until the time for procuring a rehearing has elapsed" *(Matter of Davis v Kingsbury,* 27 NY2d 567, 569; see, also, CPLR 7801; cf. *Matter of New York Cent. R. R. Co. v Public Serv. Comm.,* 238 NY 132, 135-137 [construing Civ Prac Act, § 1286, subd 3; § 1288]).

By providing that no disqualification take effect until the

applicant is given an opportunity to submit facts in opposition to the proposed disqualification, subdivision 4 of section 50 of the Civil Service Law clearly mandates that the Civil Service Commission herein must rehear the matter upon petitioner's application. Since no time limit is stated in the statute for requesting such a rehearing, a reasonable time will be inferred (see *Matter of New York Cent. R. R. Co. v Public Serv. Comm., supra*).

The letter from petitioner's attorney to the commission was dated November 15, 1977, less than two months after the initial notice of disqualification, and cannot be considered as untimely.

Although the letter of petitioner's attorney dated November 15, 1977 does not specifically ask for a rehearing, its tone and tenor reflect a desire by petitioner to submit facts in opposition to the proposed disqualification. Specifically, it is alleged in the letter that subsequent to September 23, 1977 petitioner was examined by two ophthalmologists who found that he was not color blind. The letter also asks the Nassau County Civil Service Commission to accept the findings of the two ophthalmologists so that petitioner can be accepted for police duty.

Under these circumstances, the commissioner's letter of November 21, 1977, wherein petitioner's attorney was advised that the test which was administered to petitioner is the sole arbiter of color blindness, was the starting point for the running of the four-month Statute of Limitations. Since this proceeding was commenced on January 24, 1978, it was timely commenced.

COHALAN, J. (concurring in part and dissenting in part). I agree that the judgment should be reversed; however, I would convert the proceeding to an action for a declaratory judgment.

The petition alleged, *inter alia,* that the regulation requiring color perception examinations to be based solely upon the Ishihara Test is invalid. Since jurisdiction has been obtained, this issue is a proper subject for a declaratory judgment action. Accordingly, I would deem it such. The petitioner's pleading currently before the court should be deemed a complaint, and the answers of the respondents should be deemed the answers of the defendants. Any party should be permitted to move for leave to amend his or its pleading and the action should thereafter continue as one for a declaratory judgment (see CPLR 3001, 3017).

DAMIANI, J. P., concurs with SHAPIRO, J.; SUOZZI, J., concurs in the result, in an opinion; COHALAN, J., concurs in part and dissents in part, in an opinion in which TITONE, J., concurs.

Judgment of the Supreme Court, Nassau County, entered May 25, 1978, reversed, on the law, without costs or disbursements, and proceeding remitted to Special Term for further proceedings consistent herewith.