Albert **BENSER**, d/b/a **Carrier Square Apartments, Appellant,**

v.

Cynthia **JOHNSON, Individually & as Next Friend of Alysia Johnson, a Minor, Appellee.**

No. 05–87–00692–CV.

Court of Appeals of Texas, Dallas.

March 24, 1988.

Rehearing Denied May 11, 1988.

**794**

Larry Feldman, Dallas, for appellant.

Sam W. Pettigrew, Jr. and Forrest W. Wagner, Grand Prairie, for appellee.

Before STEPHENS, McCLUNG and BAKER, JJ.

McCLUNG, Justice.

This is a negligence case. Albert Benser, d/b/a Carrier Square Apartments, appeals from a $70,000 judgment entered on behalf of appellee Cynthia Johnson, individually and as next friend of Alysia Johnson, a minor. In appellant's sole point of error he contends that his motion for new trial should have been granted because there was insufficient evidence to support the jury's answer concerning the issue of proximate cause. We affirm.

On February 1, 1983, Cynthia Johnson and her daughter moved into appellant's apartment complex. She soon discovered that the locks on the living-room window and her daughter's bedroom window were inoperable. When Mrs. Johnson complained about the locks, the complex gave her a "screw-type" lock for both the living-room and bedroom windows. There was also a stick in one of these windows to "secure" it in lieu of a lock. Mrs. Johnson placed the stick in the living-room window and installed the "screw-type" locks. The "screw-type" locks were defective and would not secure the windows. On February 18, 1984, an intruder drilled a small hole in the bottom of the living-room window and knocked the stick out of the way. The hole drilled was too small for one to stick his hand through and unlock the window. However, as the lock provided to Mrs. Johnson did not work, the intruder

was able to open the window and enter the apartment. Once inside the apartment the intruder proceeded to rape Cynthia Johnson. The rape of Mrs. Johnson was viewed by her daughter. Mrs. Johnson then brought suit against appellant alleging that appellant was negligent in not providing proper locks and security to her apartment. This appeal followed.

In appellant's sole point of error, he alleges that there is insufficient evidence to support the jury's finding that appellant's actions were the proximate cause of appellee's damages.

■ The two elements of proximate cause are cause in fact and foreseeability. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 549 (Tex.1985); *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977). Cause in fact means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Id.* Foreseeability denotes that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co.*, 552 S.W.2d at 103. The criminal conduct of a third party is a superseding cause that relieves the negligent actor from liability unless the criminal conduct is a foreseeable result of such negligence. *Nixon*, 690 S.W.2d at 550.

The RESTATEMENT (SECOND) OF TORTS § 448 (1965) states:

The act of a third party in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

■ In reviewing a factual insufficiency point, we must consider and weigh all of the evidence in the case in determining whether the evidence is insufficient or if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). The record in this case reflects appellant was aware for a long period of time that appellee's locks on her windows were broken, yet appellant refused to install working locks in violation of the requirements of sections 92.052 and 92.153 of the Property Code.[1]

The evidence adduced at trial also showed that appellant was aware that the complex was located in a high crime area and that there had been previous instances of criminal activity in the complex. Other relevant testimony included that of a Grand Prairie police officer who testified that the stick in the living-room window would indicate to a potential intruder that the window could not be locked. The officer further testified that this knowledge would encourage an intruder to pick that home to commit his unlawful acts because it would be the easiest and quickest home to enter.

In the *Nixon* case, our supreme court held that a property owner *could be* liable for his actions which create an opportunity for a third person to commit an intentional

---

1. Section 92.052 states, in pertinent part:
§ 92.052 Landlord's Duty to Repair or Remedy
(a) A landlord shall make a diligent effort to repair or remedy a condition if:
(1) the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid;
(2) the tenant is not delinquent in the payment of rent at the time notice is given; and
(3) the condition materially affects the physical health or safety of an ordinary tenant.
Section 92.153 states, in pertinent part:

§ 92.153 Duty to Install, Change, or Rekey
(a) The landlord shall install, change, or rekey a security device according to this subchapter after the landlord receives a request from the tenant of a dwelling. If the tenant's lease is in writing, the lease may require the request to be written.
(b) The landlord may select how and where a security device is installed in a tenant's dwelling. The landlord's obligation under Subsection (a) is limited to installing:
(1) one window latch on each exterior window;

tort or crime. The court went on to list certain factors to consider in determining whether criminal activity is a foreseeable result of the property owners negligence. Chief among these factors are whether the property is located in a high crime area and whether previous criminal activity has occurred on the property. Both of these factors are present in our case.

Neither party has cited any Texas cases issued subsequent to *Nixon* directly addressing the issues of premises liability, proximate cause, and third-party criminal activity. Our research has also failed to discover any such cases. However, several of the federal circuit courts as well as our sister state courts have issued opinions in cases with strikingly similar facts as our case. We find several of these opinions to be quite persuasive and will briefly discuss them below. The cases we refer to are: *Cain v. Vontz*, 703 F.2d 1279 (11th Cir. 1983); *Spar v. Obwoya*, 369 A.2d 173 (D.C. 1977); *Trentacost v. Brussel*, 82 N.J. 214, 412 A.2d 436 (N.J.1980); *Dick v. Great South Bay Company*, 106 Misc.2d 686, 435 N.Y.S.2d 240 (N.Y.Civ.Ct.1981); and *Smith v. ABC Realty Co.*, 66 Misc.2d 276, 322 N.Y.S.2d 207 (N.Y.Civ.Ct.1971).

In *Cain*, a previous break-in at Mary Cain's apartment resulted in the destruction of her front door lock. She asked the defendant apartment complex to replace her lock but it never did. Subsequently, an intruder entered through the unlocked front door and shot and killed Mary Cain. Mrs. Cain's mother brought a wrongful death action against the owner's of the complex. The trial court granted summary judgment for the defendants. On appeal, the 11th circuit, applying Georgia law, held that the plaintiff had stated a cause of action and that she had raised a fact issue as to proximate cause. The court went on to say that:

> A dangerous situation was created when the defendant failed to repair the broken locks on a young woman's apartment door. It would not take a very farsighted person to be able to imagine the possible consequences of such an action. However, this is not for the court to determine. Georgia courts have said

numerous times that questions of negligence, proximate cause, foreseeability and intervening causation are properly for a jury to determine. (citations omitted).

In *Spar*, the plaintiff was a student at a local university who was robbed and shot in the back by an assailant who had entered his apartment complex through the front entrance door to the complex. The lock on this door was broken and had not been repaired in spite of numerous complaints by the tenants. This complex was in a high crime area and had a history of previous crimes being committed on the premises. The court upheld the jury finding of liability on the part of the owners of the apartment complex stating:

> The evidence supports the theory that the negligence of appellants here was not their failure to install the type of front door that would have repulsed *every conceivable* criminal attack, but their failure to do anything to improve upon a front door lock which was easily rendered inoperative, as viewed against their knowledge, actual or constructive, of these circumstances.

> \*   \*   \*   \*   \*   \*

> In sum, then, we conclude that the jury possessed adequate information upon which to find proximate cause, and therefore their verdict on the issue of liability must stand.

In *Trentacost*, the plaintiff, while returning to her apartment, was mugged in the stairway of her apartment complex by an intruder who had entered the complex through the unlocked front door. The defendant had promised to install a lock on that door but never did. In upholding the jury verdict in favor of the plaintiff the supreme court of New Jersey stated:

> There was sufficient support for finding that the absence of a lock on the entrance to the building, which was located in a high crime neighborhood, created a foreseeable risk of harm.

The court further stated:

> The landlord was confronted with the existence of a high level of crime in the

neighborhood. *See ante* [82 N.J.] at 218–219 [412 A.2d 436]. Yet he failed to install a lock on the front door leading in to the building's lobby. By failing to do anything to arrest or even reduce the risk of criminal harm to his tenants, the landlord effectively and unreasonably enhanced that risk.

In *Dick,* the plaintiff was seriously injured by three robbers who entered the lobby of the building in which she lived through an unsecured front door. Repeated requests to repair the defective door lock were ignored. There was no evidence presented that the building was in a high crime area or of previous crimes in the complex. In upholding a jury verdict for the plaintiff the court held that "The jury could (and did) properly conclude that the defective door lock was a proximate cause of the attack." The court went on to state:

> In light of the rising crime rate in this city, and the fact that muggings, robberies and homicides have occurred in all neighborhoods, a causal relationship between a defective door lock and violent criminal activity can be determined by a jury from its common experience.

> \* \* \* \* \* \*

It was for the jury to weigh the probability of the harm to plaintiff and the gravity of that harm against the cost or burden imposed by the required precaution. Here the jury did so and found defendants negligent. That finding should not be disturbed.

In *Smith,* the plaintiff was raped by an intruder who entered through her broken window. Her request of the landlord to repair and secure the window fell on deaf ears. In upholding a jury verdict for the plaintiff the court stated:

> .... it must be held that a reasonable person in the landlord's situation should have anticipated that the opening in the fire escape window was an invitation to a criminal entry into the plaintiff's apartment. It is not necessary that the crime of rape have been anticipated. Any violent crime may be expected to accompany a burglary.

> \* \* \* \* \* \*

There can be little doubt that a principal purpose of a latch on an intact window abutting a fire escape has as its principal purpose the exclusion of intruders. Under such circumstances the defendant may not be heard to say that the entry of the intruder excuses its failure to repair the broken window.

The cases cited above clearly show that this jury could properly find that the landlord's negligence was the proximate cause of this tenant's injuries. The jury did so find in this case. We cannot conclude from an examination of the record here that this jury's finding's are so against the great weight and preponderance of the evidence as to be manifestly unjust. Consequently, we must affirm the judgment of the trial court.