DECISION.
{¶ 1} At the age of 21 months Michael Cipollone was the victim of an accident — the precise circumstances of which are known to none — that left him hospitalized for two months, necessitated extensive therapy, and led to the conviction of his father for child endangerment. His mother sought to hold someone responsible for the injuries to her child by suing her landlord for failing to keep his property safe.
 {¶ 2} Because she could not show how her son was injured or that the landlord had a duty to take the precautions she claimed would have prevented the accident, the trial court granted summary judgment to the landlord. She appeals to us. Despite our sympathy for both mother and child, we hold the trial court correctly applied the law and affirm its decision.
 I. Michael's Accident {¶ 3} Michael Cipollone was 21 months old when he was hurt in March 2003. He was living with his parents, plaintiff-appellant Crystal Marie Cipollone and David Jason Hodge, in a rented house on Elstun Road in Anderson Township. The family shared the home with Hodge's sister and niece. Their landlord, defendant-appellee Walter K. Hoffmeier, also lived on Elstun Road. Hoffmeier owned several rental properties and testified that he kept them in good condition by regularly visiting them and doing all his own maintenance work.
 {¶ 4} On the afternoon he was hurt, Michael and his parents took a nap together in the same bed in an upstairs room. When they went to sleep, Michael was lying between his parents. Around four o'clock, Cipollone's mother came to visit and *Page 3 
found Michael on the ground outside. He was semiconscious, with an injury to his head. An ambulance took Michael to Cincinnati Children's Hospital. He spent two months there, which was followed by extensive speech, physical, and occupational therapy at the Drake Center.
 {¶ 5} Those are the undisputed facts. What is contested is how Michael got from the bed to the ground outside. Michael's bottle was in a gutter above where he was found and some leaves said to have been dislodged from that gutter were on the ground near him. Cipollone alleged in her complaint that Michael had opened a window, walked out on the porch roof beneath it, and fallen to the ground. There was precedent for this assumption: Michael had opened a window and gotten onto that same roof on the day before he was hurt.
 {¶ 6} But as to what happened the day of the accident, we do not know. Only his parents were at home when Michael was hurt and both were asleep. Michael was not old enough to say what happened to him. Cipollone testified that the upstairs windows were shut when Michael was found, but there is some evidence in the record that these were older windows, with weights in the frames, that would have closed on their own.
 {¶ 7} Whatever the precise cause of Michael's injury, the state charged the parents with child endangerment.[1] Hodge was convicted.[2] But Cipollone was acquitted.[3] The different verdicts appear to be because Hodge had found Michael on the roof the day before the accident and had failed to take sufficient precautions to keep the child safe. Cipollone was not home at the time of the previous incident, and it appears the trial court was not persuaded that she shared the father's culpability. *Page 4 
 {¶ 8} Cipollone then filed suit against Hoffmeier, claiming her landlord was negligent because the windows of the house did not have latches or locks on them. Hoffmeier argues the law did not require them. He also asserted that because heavy storm windows with hard-to-open spring-loaded latches were usually in place over the windows, latches on the interior windows were unnecessary. (Michael's parents had raised those storm windows, even though it was still March.)
 {¶ 9} Hoffmeier also advances another possibility for Michael's injury. Hoffmeier noted that as Michael was able to climb stairs and open doors — his mother testified to that in her deposition — it was possible that Michael could have gone downstairs from his room and out onto the porch itself, falling to the ground from there rather than falling from the porch roof.
 {¶ 10} Hoffmeier sought and was granted summary judgment. Cipollone now appeals.
 {¶ 11} We review summary-judgment determinations de novo, without deference to the trial court.[4] Summary judgment should be granted only when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can only come to a conclusion adverse to the nonmoving party, when viewing the evidence in the light most favorable to the nonmoving party.[5] A party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[6] *Page 5 
 III. Applying the Standard for Negligence {¶ 12} To establish negligence, a plaintiff must prove the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach.[7] Cipollone had trouble meeting each prong of this test.
 {¶ 13} Hoffmeier sought summary judgment on four grounds: (1) an intervening cause, Hodge's negligence, had relieved Hoffmeier from liability; (2) Hoffmeier had no notice the windows were dangerous; (3) the lack of evidence showing the failure to supply window latches created a dangerous condition; and (4) the unknown circumstances of Michael's accident. The trial court agreed with all these points in granting summary judgment to Hoffmeier. We address them in turn, except for the intervening-cause argument. We do not reach it, because there are three independent reasons Hoffmeier was not liable. But we are skeptical that intervening cause would have applied to these facts.
 IV. Hoffmeier Not Put on Notice {¶ 14} To be liable for defects, a landlord must be put on notice of them.[8] A landlord has been held liable to a woman raped in his apartment building because he was aware both of a tenant's window locks being broken and of the crime problem in the neighborhood.[9] And where a landlord had quickly made repairs in the past when notified but had failed to quickly repair a window latch reported to it, the landlord was liable for a child falling through the window.[10] *Page 6 
 {¶ 15} In this case, Hoffmeier had previously rented the house to tenants with small children and the issue of window locks had never arisen. Hoffmeier himself was a father and testified that he had not considered window locks necessary in his home when his child was small. If we accept that the failure to provide locks was a dangerous condition, it was one that became known to Michael's parents only the day before his accident when Michael got onto the porch roof. Even if we assume that Hoffmeier had been put on notice by his tenants — and there is no evidence he had been — he would have had but a single day to cure the supposed defect. That would not have been reasonable. Hoffmeier could not be held responsible for a failure to install window locks because of both the lack of notice and the lack of time to install them.
 V. Hoffmeier's Duty to His Tenants {¶ 16} At common law, a landlord had no liability for dangerous conditions in premises controlled by his tenant.[11] But legislatures and courts have so greatly curtailed this today "the exceptions nearly have swallowed up the general rule."[12] For example, a landlord's immunity may be limited if he has failed to follow the law.[13]
 {¶ 17} "A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property * * * by a dangerous condition * * * if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of: (1) an implied warranty of habitability; or (2) a duty created by statute or administrative regulation."[14] *Page 7 
 {¶ 18} Cipollone claims that Hoffmeier violated the Landlord Tenant Act, which sets the standard for the warranty of habitability.[15]
Violations of the act are considered negligence per se in injury cases.[16] Landlords are required to "(1) [c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety [and] (2) [m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition."[17] Neither clause applied here.
 {¶ 19} There was no evidence any local ordinance had been breached. This differs from an Alabama case ruling that a landlord could be held responsible for the murder of a tenant when a criminal entered the premises because of the landlord's failure to provide locks on doors as required by a city ordinance.[18]
 {¶ 20} But if a landlord fails to keep the promises he has made in a lease, he can be liable for the omission.[19] We have ruled that where the landlord had agreed to provide locks, he was liable for the damages resulting from his failure to do so.[20] This was the same reasoning used to hold that a landlord could be held liable for an infant's injuries resulting from the landlord's failure to provide the locks contracted for in the lease.[21] Failure to keep equipment in good repair has led to liability, as in a Tennessee case when a girl sat on a theatre's windowsill and fell into the street below because the bolt that had kept the window's shutters closed was missing.[22] But while landlords have a duty to keep window locks in good repair, the failure to do so does *Page 8 
not relieve a plaintiff of the obligation to show that there was a causal connection between the injuries he suffered and the defective lock.[23]
 {¶ 21} In this case, Hoffmeier presented an affidavit from an engineer stating that there were no local codes requiring window latches in Michael's home. Cipollone did not refute that. (The affidavit also stated that, subsequent to the accident, Hamilton County mandated window locks in new construction, but building codes cannot be retroactively applied.[24]) Nor did she demonstrate that Hoffmeier had promised to provide window locks or had failed to maintain the locks.
 {¶ 22} Window latches are not within the reach of the Ohio Landlord-Tenant Act. "[I]n order to maintain a claim under R.C.5321.04(A)(2), a plaintiff must show that the premises are unfit and uninhabitable."[25] To run afoul of R.C. 5321.04(A)(2), defects "must be so substantial as to amount to a constructive eviction" and be more than nuisances or trifles.[26] Hoffmeier cited several Ohio appellate courts that have held the statute contemplates serious issues of health and safety.[27] An examination of the remaining clauses of R.C.5321.04(A) bears this out, specifically in its references to "safe and sanitary conditions;"[28] essential utilities such as electricity, heating, and cooling[29]; hot and cold running water[30]; and the removal of garbage.[31] Window latches are not necessary for a property to be habitable. Thus Hoffmeier did not breach the warranty of habitability when he rented his home without the latches. *Page 9 
 {¶ 23} Because Hoffmeier did not violate the Revised Code, any local ordinance, or any contractual obligation, we hold that he had no duty to provide the window latches as a matter of law.
 VI. The Uncertainty Principle {¶ 24} We note that the plaintiff has the burden of proving that the defendant's tortious conduct caused plaintiffs harm.[32] We do not know what happened to Michael.
 {¶ 25} Cipollone argues that Michael opened a window, climbed outside onto a roof, and from there fell to the ground. This is plausible, as he had gone out onto that roof the day before his accident. All things being equal, the simplest explanation is usually the correct one.[33]
If stare decisis obliged us to follow this principle, commonly known as Occam's Razor, we would have a basis for ruling in her favor. Some jurisdictions have adopted this doctrine.[34] Ohio has not.[35]
Precedent does not allow us to traffic in uncertainties. "At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence."[36] *Page 10 
 {¶ 26} "An inference of negligence * * * can never arise from mere guess, speculation, or wishful thinking."[37] In a personal-injury case, one must be able to show what happened to cause the injury in order to prove negligence.[38] The Ohio Supreme Court has held that "[i]t is incumbent on the plaintiff to show how and why an injury occurred — to develop facts from which it can be determined by the jury that the defendant failed to exercise due care and that such failure was a proximate cause of the injury."[39] The failure of plaintiffs to show exactly how they were hurt has proved fatal to their cases.[40]
The Ohio Supreme Court has enunciated a broad principle in the context of public buildings that "[o]wners * * * are not insurers against all forms of accidents that may happen to any who come."[41]
 {¶ 27} Cipollone's theory of what happened to her son was guess and speculation. Hoffmeier proposed an equally plausible set of circumstances that could have led to Michael's injuries. Cipollone has insufficient evidence to support her theory. To allow speculation to create liability would make landlords insurers. We decline to do so here. Because of Cipollone's inability to show how her son was injured, there is no basis in law for finding Hoffmeier negligently caused Michael's injuries.
 VII. No Liability {¶ 28} In summation, Hoffmeier had no notice of a dangerous condition, he did not have a duty to provide locks, and there is no proof his actions led to Michael's *Page 11 
injuries. There being no duty, dangerous condition, or causation, Hoffmeier was not liable as a matter of law for Michael's injuries. While we sympathize with Michael and his family, Cipollone failed to make her case. We affirm the entry of summary judgment for Hoffmeier.
Judgment affirmed.
HENDON and CUNNINGHAM, JJ., concur.
[1] R.C. 2919.22.
[2] State v. Hodge (May 8, 2003), Hamilton Cty. M.C. No. C-03CRB-12151.
[3] State v. Cipollone (June 27, 2003), Hamilton Cty. M.C. No. C-03CRB-12150.
[4] See Doe v. Shaffer, 90 Ohio St.3d 388, 2000-Ohio-186,738 N.E.2d 1243.
[5] Civ.R. 56(C); Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267.
[6] See Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107,662 N.E.2d 264.
[7] Wellman v. East Ohio Gas Co. (1953), 160 Ohio St. 103,113 N.E.2d 629, paragraph three of the syllabus; Menifee v. Ohio Welding Products,Inc. (1984), 15 Ohio St.3d 75, 472 N.E.2d 707; LaCourse v. Fleitz (Dec. 27, 1985), 6th Dist. No. L-85-184.
[8] Sikora v. Wenzel, 88 Ohio St.3d 493, 496, 2000-Ohio-406,727 N.E.2d 1277; Stancil v. K.S.B. Invest. and Mgmt. Co. (1991),62 Ohio App.3d 765, 770, 577 N.E.2d 452.
[9] Benser v. Johnson (Tex.App. 1998), 763 S.W.2d 793.
[10] Jones v. Chicago Housing Auth. (1978), 59 Ill.App.3d 138,376 N.E.2d 26.
[11] Shump v. First Continental-Robinwood Assoc., 71 Ohio St.3d 414,417-418, 1994-Ohio-427, 644 N.E.2d 291.
[12] See id.
[13] Shroades v. Rental Homes, Inc. (1981), 68 Ohio St.2d 20, 23,427 N.E.2d 774.
[14] Id. at 24, quoting Restatement of the Law 2d, Property (Landlord and Tenant) (1977), Section 17.6.
[15] R.C. 5321.04.
[16] Shroades, supra, at syllabus; Robinson v. Bates,160 Ohio App.3d 668, 2005-Ohio-1879, 828 N.E.2d 657, ¶ 7, affirmed 112 Ohio St.3d 17,2006-Ohio-6362, 857 N.E.2d 1195.
[17] R.C. 5321.04(A).
[18] Brock v. Watts Realty Co. (Ala. 1991), 582 So.2d 438.
[19] Stackhouse v. Close (1911), 83 Ohio St. 339, 94 N.E. 746, paragraph one of the syllabus.
[20] Blair v. Property Mgmt. Consultants (1987), 40 Ohio App.3d 103,531 N.E.2d 752. Cf. Adekanbi v. Purdue Leasing, L.L.C. (2006),821 N.Y.S.2d 373.
[21] Ross v. Haner (Tex.App. 1922), 244 S.W. 231, 235.
[22] Crescent Amusement Co. v. Byrne (1926), 3 Tenn.App. 425.
[23] Rubio v. Reilly (1974), 353 N.Y.S.2d 781, 44 A.D.2d 592.
[24] Gates Co. v. Housing Appeals Bd. (1967), 10 Ohio St.2d 48,225 N.E.2d 222, syllabus; N. Ohio Sign Contractors Assn. v. Lakewood (1987),32 Ohio St.3d 316, 321, 513 N.E.2d 324
[25] Bogner v. Titleist Club, L.L.C., 6th Dist. No. WD-06-039,2006-Ohio-7003, ¶ 26.
[26] Winegarden v. Eagle Ridge Condominiums (1995), 71 Ohio Misc.2d 7,13, 653 N.E.2d 759.
[27] Aldridge v. Englewood Village, Ltd. (July 22, 1987), 2nd Dist. No. 10251; McGuire v. KG Mgt. Co. (Aug. 27, 1998), 5th Dist., No. 98 CA 35; McDaniels v. Petrosky (Feb. 5, 1998), 10th Dist. No. 97APE08-1027;Taylor v. Alexander (July 11, 1986), 11th Dist. No. 3550.
[28] R.C. 5321.04(A)(3).
[29] R.C. 5321.04(A)(4).
[30] R.C. 5321.04(A)(6).
[31] R.C. 5321.04(A)(5).
[32] Gedra v. Dallmer Co. (1950), 153 Ohio St. 258, 91 N.E.2d 256, paragraph three of the syllabus; Restatement of the Law 2d, Torts (1965) Section 433B.
[33] See, e.g., Colon v. Secy. of Health and Human Servs. (Jan. 10, 2007), U.S. Ct. of Fed. Cl. No. 04-0044V, fn. 10; Terumo Med. Corp. v.Greenway (2006), 171 Md.App. 617, 625, 911 A.2d 888; United States v.Kelly (D.D.C. 2003), 267 F.Supp.2d 5, 10; J.D. v. Shoreline SchoolDist. (W.D.Wash. 2002), 220 F.Supp.2d 1175, 1186; State v. Auliye
(Alaska App. 2002), 57 P.3d 711, 717; Swierupski v. Korn (1979),419 N.Y.S.2d 87, 91, 69 A.D.2d 632.
[34] Cf. In re Thayer (Bankr.D.Minn.2007), 360 B.R. 912, 919;Justiss Oil Co. v. Kerr-McGee Refining Corp. (C.A.5 1996), 75 F.3d 1057,1060-1061; Swann v. Olivier (1994), 22 Cal.App.4th 1324, 1329, 28
Cal.Rptr.2d 23; McComb v. Frank Scerbo Sons, Inc. (C.A.2 1949), 177 F.2d 137, 141 (Frank, J., concurring).
[35] See, e.g., Gedra, supra; Shumaker v. Oliver B. Cannon Sons,Inc. (1986), 28 Ohio St.3d 367, 369, 504 N.E.2d 44
[36] See Shumaker, 28 Ohio St.3d at 369.
[37] Parras v. Standard Oil Co. (1953), 160 Ohio St. 315,116 N.E.2d 300, paragraph two of the syllabus; Adkins v. Chief Supermarket, 3rd Dist. No. 11-06-07, 2007-Ohio-772, ¶ 9.
[38] Stamper v. Middletown Hosp. Assn. (1989), 65 Ohio App.3d 65,67-68, 582 N.E.2d 1040; Beck v. Camden Place at Tuttle Crossing, 10th Dist. No. 02AP-1370, 2004-Ohio-2989, ¶ 12.
[39] Boles v. Montgomery Ward Co. (1950), 153 Ohio St. 381, 389,92 N.E.2d 9.
[40] See, e.g., Cleveland Athletic Assn. v. Bending (1934),129 Ohio St. 152, 194 N.E. 6, paragraph two of the syllabus. Cf. Francis v.Showcase Cinema Eastgate, 155 Ohio App.3d 412, 2003-Ohio-6507,801 N.E.2d 535, ¶ 11.
[41] S.S. Kresge Co. v. Fader (1927), 116 Ohio St. 718, 724,158 N.E. 174. See, also, Jackson v. Kings Island (1979), 58 Ohio St.2d 357, 359,390 N.E.2d 810; Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203, 204, 480 N.E.2d 474. *Page 1