**CONCUR and Opinion Filed May 3, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00556-CV**

**SKEET PHILLIPS, Appellant**
**V.**
**RAY CLARK, Appellee**

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 90510-422**

## CONCURRING OPINION

Before Justices Whitehill, Molberg, and Reichek
Concurring Opinion by Justice Whitehill

I agree that we lack jurisdiction over this appeal but disagree with the majority opinion's reasoning.

In short, whether we have jurisdiction over Phillips's appeal from the denial of his summary judgment motion in this defamation case depends on whether he asserted a ground based on the First Amendment, its Texas equivalent, or Civil Practice and Remedies Code Chapter 73. He didn't. Enough said. That should end the appeal.

But instead of following this straightforward path to its logical end, the majority opinion unnecessarily explores the boundaries of what constitutes "electronic media" and being a member thereof in this era of burgeoning public dissemination of news and debate on the Internet. And then the majority opinion errs in its analysis. The majority opinion even disagrees with its principal

authority on what constitutes electronic media. And even that authority is suspect in light of an intervening case.

We should not reach issues we do not need to reach to decide a case. Because there is a straightforward answer to this case without exploring in the first instance the boundaries of what constitutes the electronic media, we should follow the straightforward path and wait until when defining the electronic media is necessary to decide the case then before us.

## I. ANALYSIS

### A. Statutory Interpretation Principles

The supreme court in *Dallas Symphony Ass'n, Inc. v. Reyes* held that we are no longer to narrowly construe Civil Practice and Remedies Code § 51.014(a)(6). No. 17-0835, 2019 WL 1090771, at *3–4 (Tex. Mar. 8, 2019). Thus, we should interpret that statute according to normal statutory construction principles.

When construing a statute, we attempt to ascertain and effect the legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). Our starting point is the statutory words' plain and ordinary meaning. *Id*. If a statute's meaning is unambiguous, we generally enforce it according to its plain meaning. *Id*. We read the statute as a whole and interpret it so as to give effect to every part. *Id*.

> We look to the plain meaning of the words in a statute as an expression of legislative intent. If the statute is clear and unambiguous, we must read the language according to its common meaning without resort to rules of construction or extrinsic aids. Thus, we initially limit our statutory review to the plain meaning of the text as the sole expression of legislative intent, unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results.

*Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015) (citations and internal quotations omitted).

"Undefined terms in a statute are typically given their ordinary meaning." *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180 (Tex. 2013) (per curiam).

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920).

Furthermore, Occam's Razor is the principle that the simplest of competing theories should be preferred to the more complex and subtle. *Swierupski v. Korn,* 419 N.Y.S.2d 87, 91 (N.Y. App. Div. 1979). Stated differently, the simplest answer is usually the best answer. Courts often cite this principle in reaching logical results. *See, e.g., Alabama–Tennessee Nat. Gas Co. v. Fed. Power Comm'n,* 359 F.2d 318, 335 (5th Cir. 1966); *La. Workers' Comp. Corp. v. La. Ins. Guar. Ass'n*, 20 So. 3d 1047, 1059 n.13 (La. Ct. App. 2009).

Occam's Razor's wisdom is a reason why a statute's plain language is the first (and often only) tool we use in statutory construction. *Guttman v. Wells Fargo Bank*, 26 A.3d 856, 857 (Md. 2011). That wisdom applies well here.

## B. What does the relevant statute say?

The relevant statute is Civil Practice and Remedies Code § 51.014(a)(6), which provides:

> (a) A person may appeal from an interlocutory order . . . that:
>
> . . .
>
> (6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, *arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73 . . . .*

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(6) (emphasis added).

The majority opinion reiterates the statute's five elements that the supreme court identified in *Dallas Symphony Ass'n*. One of our sister courts summarized those elements thusly:

> The legislature in 1993 provided for an interlocutory appeal from the denial of a motion for summary judgment by members of the electronic or print media when the grounds for the motion for summary judgment are based on (1) the free speech or free press clause of the First Amendment, (2) the Texas Constitution article I, section 8, or (3) Civil Practice and Remedies Code chapter 73.

*Grant v. Wood*, 916 S.W.2d 42, 46 (Tex. App—Houston [1st Dist.] 1995, orig. proceeding).

Although the statute is no model of clarity, its elements comprise three conjunctive components:

1.      there is an interlocutory appeal from the grant or denial of a summary judgment motion (the procedural component);

2.      by (a) a member of the electronic or print media acting in that capacity or (b) a person whose communication appears in or is published by the electronic or print media (the media component); *and*

3.      the summary judgment motion is based at least in part upon a claim or defense arising under the First Amendment's free speech or free press clauses, the Texas equivalents, or Chapter 73 (the arises under component).

The procedural component describes the trial court event that triggers the appellant's right to an interlocutory appeal. This statute's trigger is a summary judgment denial.

The media component identifies two classes of parties who may invoke the right to pursue the appeal. One class is the "members class." Common sense, obvious examples of this class include Walter Cronkite or CBS News. The other class is the "non-members class," which includes a person who is otherwise not a member of the media but whose communication appears in or is published by the electronic or print media. A common sense, obvious example of this class

would be an average person who writes a letter to the editor or is interviewed by a reporter and her comments get published by that media platform.

The arises under component defines the required nature of an asserted summary judgment ground that was denied.

Thus, to be entitled to an interlocutory appeal via § 51.014(a)(6), the appellant must be a media component party whose denied summary judgment motion asserted a ground arising under one of the specified constitutional or statutory provisions.

Because Phillips appeals a summary judgment denial, the focus is whether his appeal meets the media and arises under components. The majority opinion ignores the arises under component and focuses solely on the media component. But not only is it simpler to first ask whether Phillips's appeal passes the arises under test, but the majority opinion also misconstrues and thus misapplies the media test.

**C.      Was Phillips's summary judgment motion based at least in part on the specified constitutional provisions or Chapter 73?**

No.

To begin, Phillips's motion is not based upon a claim. Instead, it attacks Clark's claims. But the statute says the motion must be "based upon" a claim or defense. The verb "base" means "to make or form a base or foundation for" or "to establish, as a fact or conclusion (usually followed by *on* or *upon*)." *Base*, http://www.dictionary.com (last visited May 3, 2019). Thus, only a claimant's motion can be "based upon" a claim.

Here, Phillips's motion was based on these defensive grounds:

- the evidence established that Clark suffered no damages from the alleged defamation and libel per quod;

- Clark had no evidence that he suffered any damages from the alleged defamation and libel per quod;

- the evidence established that Phillips did not participate in any meeting of the minds to defame Clark, thus defeating the conspiracy claim;

- the evidence established that Clark suffered no damages from the alleged conspiracy; and

- Clark had no evidence that Phillips participated in any meeting of minds to defame Clark or that he suffered any damages from the alleged conspiracy.

But, none of these defensive grounds is based even in part on the federal or Texas constitutions or Chapter 73. Accordingly, we lack jurisdiction over Phillips' interlocutory appeal.

This plain text result occurs without having to consider whether Phillips is a member of the electronic media. Because the majority opinion focuses on whether only the electronic media is involved here without addressing the print media, I focus on only the electronic media part of the media component.[1] Since we can resolve the case on this straightforward basis, we should do so without broaching what constitutes electronic media in the Internet era.

**D.    Is Phillips a person whose communication appeared in or was published by electronic media?**

Yes.

I agree that the record does not show that Phillips is a member of the electronic media. The statute does not define the phrase "member of the electronic or print media." But whatever that phrase means, the word "member" must mean at least that the litigant has a more substantial connection to the electronic media than the ordinary person does. *See Member*, THE NEW OXFORD AMERICAN DICTIONARY (2001) ("an individual belonging to a group such as a society or team"). Nothing in the record shows that Phillips is part of a media group or has any unusual connection to the electronic or print media. Thus, the record does not affirmatively show that he satisfies this prong of the media component.

---

[1] To cover all bases, the majority opinion needs to address the printed mailers but doesn't. I don't address it either because the arises under component fails.

However, concluding that Phillips is not a member of the electronic media is only half of the analysis. Conceptually, he could still satisfy the media component if his communications appeared in or were published by the electronic media. Because there is some summary judgment evidence that Phillips's communications appeared in or were published on myrighttoknow.org, the question remains whether that website constitutes electronic media.

Rather than addressing that question directly, the majority opinion concludes that Phillips's communications weren't published on or by the media because "media" in that context means the same thing as "member of the media" and there's no evidence that myrighttoknow.org was a member of the media. That is, according to the majority opinion, that website was not in the business of news reporting or professional investigation and commentary on matters of public concern. In so doing, the majority opinion errs in several ways.

First, the majority opinion ignores the common understanding that electronic media includes the Internet. Specifically, a "medium" (as opposed to a member of the media) is simply "a means by which something is communicated or expressed." *Medium*, THE NEW OXFORD AMERICAN DICTIONARY (2001). Moreover, dictionaries define "media" to include Internet websites:

> . . . the main means of mass communication (esp. television, radio, newspapers, and the Internet) . . . .

*Media*, THE NEW OXFORD AMERICAN DICTIONARY. Similarly,

> Communication channels through which news, entertainment, education, data, or promotional messages are disseminated. Media includes every broadcasting and narrowcasting medium such as newspapers, magazines, TV, radio, billboards, direct mail, telephone, fax, and internet.

*Media*, http://www.businessdictionary.com/definition/media.html (last visited May 3, 2019). Thus, according to plain text and common understanding, electronic media includes Internet websites.

Second, the lead case in the majority opinion's analysis, *SEIU Local 5 v. Professional Janitorial Service of Houston, Inc.*, defines electronic media to include websites. *See* 415 S.W.3d 387, 389 (Tex. App—Houston [1st Dist.] 2013, pet denied). Furthermore, *SEIU*'s restrictive approach to § 51.014(a)(6)'s scope, *id.* at 394–95, is no longer valid after the supreme court rejected that approach in *Dallas Symphony Ass'n*, 2019 WL 1090771, at *3–4.

Third, the majority opinion interjects the "member of" requirement into the media component's non-members class of potential appellants when that class contains no such membership restriction. It is wrong to conflate "member of the media" and "media" in these separate statutory clauses. In so doing, the majority opinion essentially rewrites the relevant language to read "a person whose communication appears in or is published by *a member of* the electronic or print media." But the words "a member of" do not exist in that clause—and we are not allowed to rewrite a statute. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam).

Fourth, two of the three cases discussed by the majority treat and analyze the two media component classes separately, without reading a "member of the media" requirement into the non-members class. *See SIEU*, 415 S.W.3d at 402–03 (analyzing non-members class as a separate possibility from the "member" class); *Hotze v. Miller*, 361 S.W.3d 707, 711–12 (Tex. App.—Tyler 2012, pet. denied) (treating the two classes as separate inquiries and concluding that Hotze satisfied both). The third case held that the appellant met the members class requirement and so did not consider the non-members class. *Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130, 137–43 (Tex. App.—Fort Worth 2009, pet. denied).

The majority argues that we cannot give the "non-members class" a plain language interpretation because it makes the class so large as to make the "members class" meaningless surplusage. However, it is well-settled that the anti-surplusage canon of construction is not an

inflexible and ironclad rule. *See Spence v. Fenchler*, 180 S.W. 597, 601 (Tex. 1915) (statute should be read to make no part superfluous "when possible to do so"); *cf. U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 167 (Tex. App.—Dallas 2008, no pet.) (in contract interpretation, the anti-surplusage canon is not an "ironclad rule"). "Put to a choice, . . . a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 176 (2012). "Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." *Id*. at 176–77. That is the case here. Perhaps every appellant within the members class also comes within the plain meaning of the terms of the non-members class. Nevertheless, the non-members class has a plain meaning, and that's how we should interpret it.

Furthermore, there is a logical reason for including both classes. For example, assume Walter Cronkite had been sued for something he said in a broadcast while reporting about a public figure. In that instance, (i) referring to a member of the media acting in that capacity as well as (ii) including the First Amendment freedom of speech and of the press principles in the arises under component would ensure that Cronkite could appeal from the denial of a summary judgment asserting First Amendment based defenses. Whereas, the second clause ensures that an average person, who is not a member of the media, has the same rights in a pure Chapter 73 libel suit based on her letter to the editor. The legislature could reasonably conclude that it wanted to make doubly sure that this interlocutory appeal right was available in both instances and so provided.

Similarly, another plausible reading of the second clause could be that the legislature specifically wanted to expand this statutory benefit to a non-media party whose communication was republished by a wider array of communication outlets than traditional, well-recognized media

platforms. That is, the legislature may well have intended to ensure that an average person gets the same benefit if someone overhears her comments and then spreads them on the Internet.

Of course, all of this discussion would be unnecessary if we simply decided the case under the arises under component.

### E.     Does the absurdity rule apply here?

No.

The majority opinion improperly invokes the absurd results rule because "[t]he absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013). We should be very slow to invoke that safety valve.

Furthermore, the results of the plain meaning interpretation are neither odd nor absurd. The majority opinion posits that it is absurd to read the statute to give an interlocutory appeal to an ordinary person simply because her statements appear somewhere on the Internet, regardless of whether the subject website is a recognized journalistic platform. Why is this absurd? The majority opinion does not explain.

Section 51.014(a)(6) gives some litigants an interlocutory appeal when a summary judgment motion is based on certain constitutional rights or Chapter 73. The majority opinion, however, limits that benefit to, essentially, professional journalists and people published by professional journalists. But there is no absurdity in extending the right to ordinary citizens, the "little guys," who get sued because their communications are published on a "non-journalist" website and then try to vindicate their constitutional or statutory rights via summary judgment.

Suppose an ordinary person is sued for being quoted on the internet and she invokes a First Amendment defense. Why should she get the benefit of § 51.014(a)(6) if she was quoted on CNN's website but not if she was quoted on myrighttoknow.org? Either way, she has been sued,

potentially in violation of her constitutional rights.  It is not absurd to think the legislature might have wanted to give her an interlocutory appeal in both scenarios.  The majority opinion's distinction is both arbitrary and unsupported by the statutory language.

It is the legislature's job to narrow the statute's reach, if that is what the legislature wants.

## IV.  CONCLUSION

In this case, not only is the analysis based on Phillips's inability to meet the arises under component the simpler and thus preferred approach, it is the only correct approach on this record and § 51.014(a)(6)'s unambiguous terms.  Therefore, we should base our opinion on that reasoning and reserve our opinion on what constitutes electronic media in this context for when it is necessary for us to so.

Accordingly, I concur in the Court's judgment.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


180556CF.P05